573 A.2d 562

**William BRESSLER, Appellant,**

v.

**DANNON YOGURT and William Hagstotz, Appellees.**

Superior Court of Pennsylvania.

Argued June 5, 1989.

Filed April 17, 1990.

476

Anthony P. Baratta, Philadelphia, for appellant.

Larry R. McDowell, Philadelphia, for appellees.

Before CIRILLO, Presiding Judge, BROSKY, ROWLEY, McEWEN, OLSZEWSKI, TAMILIA, POPOVICH and JOHNSON,* JJ.

McEWEN, Judge:

We here consider an appeal from a judgment entered after a jury found appellant, William Bressler, 50% causally negligent and assessed damages in the amount of $18,500. A divided panel [1] of this Court found that the trial court had erred in instructing the jury that "if you find that [appellant] was in the act of crossing the roadway at a point other than within a crosswalk or an intersection *then you should find him negligent.*" (emphasis supplied). Appellees filed a motion for reargument before the court *en banc* arguing that the award of a new trial was error and, in the alternative, that if a new trial is warranted, it should be limited to the issue of the percentages of comparative negligence of the parties. We find upon a consideration of the charge of the court as a whole that a new trial is necessary as to liability as well as damages.

At approximately 8:00 a.m. on a summer morning, appellee William Hagstotz, an employee of Dannon Yogurt, parked his delivery van at 4045 Ridge Avenue with the motor running while he purchased coffee from a restaurant

---

* Melinson, J., did not participate in the consideration of or decision upon this appeal.

1. Judge Del Sole concluded that the "compulsory direction" required an award of a new trial as to all issues. Judge Wieand concurred in the decision that a new trial was necessary but disagreed with the conclusion of Judge Del Sole that our Supreme Court did not, in *Rice v. Shuman,* 513 Pa. 204, 519 A.2d 391 (1986), abolish the presumption of due care in favor of a deceased or incapacitated party. Judge Cavanaugh dissented, finding that the court's instructions, when considered as a whole, were not misleading.

across the street. Appellant, William Bressler, lived above the restaurant at 4034 Ridge Avenue and worked across the street at 4045 Ridge Avenue as a machine operator for Burgess & Whey. Hagstotz returned to his delivery van, opened the top on his coffee cup, checked his two rear view mirrors, and, when backing the van to move from the parking space into the lane of traffic, struck appellant with the rear of the delivery van.

The only witness to the accident, Constance Barber, was a passenger on a SEPTA bus which, while proceeding on Ridge Avenue in the same direction as the van, had stopped to let the van into the line of traffic. Ms. Barber testified that, while seated on the bus, she saw appellee's van back up and strike appellant. Although the witness was unable to describe the contact between the van and appellant, she testified that she saw appellant lying face down in the street after being hit. Ms. Barber testified that the delivery van appeared to be parked in the parking lane and that there were vehicles parked in front of and behind the van. Appellant, who complained of numbness in his hands and forearms upon regaining consciousness, was treated at the emergency room of a local hospital for lacerations of his head and face and released.

Appellant suffered from a congenital abnormality of the spine and limbs, skeletal dysplasia or achondroplasia. Dr. Eugene Kopits, an orthopedic surgeon specializing in the treatment of skeletal dysplasia, appeared as an expert witness for appellant and testified that although he was unable to make a precise diagnosis of appellant's disorder, he believed that appellant suffered from a form of skeletal dysplasia [2], probably in the group of the saurismosis or

---

2. Dr. Kopits testified: "In the particular case of Mr. Bressler, he would fit, as far as I can see, in the mucopolysaccharidosis group which, again, means that there is a storage of certain materials different from each one of the conditions within the lysosomes. Essentially they are lysosomal-enzyme diseases.... I think it can be simply explained for the sake of the jury, that, yes, there are certain conditions in which there is abnormal storage of some components that are normally present, but for some obscure reason that we do not

storage diseases. Dr. Kopits testified that as a result of this condition, appellant was short (4'–11") and had a narrowing of his spinal canal and/or a meningeal constriction of a segment of his cervical spinal cord. Dr. Kopits further testified that any type of blow to the head or neck or a trauma such as general anesthesia could cause an individual with this condition to suddenly suffer a range of symptoms from pain and weakness to paralysis and death.

Appellant, who had had his left hip replaced two years before the instant occurrence, underwent hip replacement surgery on his right hip three months after the accident. This surgery had been contemplated prior to the accident and was related to appellant's congenital abnormalities. The medical records of the orthopedic surgeon who performed the hip surgery suggested that the surgery was successful and appellant's recuperation uneventful. However, the following spring, appellant began experiencing pain and weakness in his neck and arms. Appellant's condition continued to deteriorate and nineteen months after the accident, he underwent a cervical laminectomy complicated by congenital deformities of his cervical spine. The evidence produced at trial suggested that appellant, although still experiencing weakness of his limbs, recovered from the laminectomy. However, two and one-half years after the accident, appellant was admitted to Temple University Hospital and diagnosed as having sustained some type of damage to his brain, possibly caused by a stroke. Appellant exhibited weakness of his extremities, speech aphasia and disorientation at the time of his admission and his condition continued to deteriorate until he became completely bedridden, unable to communicate and totally dependent upon his sister for every facet of his existence.

Appellant's expert witnesses testified that due to the congenital deformities of his spine, the trauma of the accident precipitated a chain of events leading directly to his present paralysis and brain damage. Even appellant's ex-

yet understand, in these diseases, these substances are just stored up in the cells and the cells can't get rid of it."

perts, however, testified that they did not know the extent of or the exact mechanism which had caused the brain damage suffered by appellant.

Appellees' expert, predictably, testified that even if the accident had contributed to the conditions necessitating the cervical laminectomy nineteen months after the accident, there was no correlation or connection between the laminectomy and all of the apparently permanent problems which beset appellant. Appellees argued that it was just as likely that appellant's present condition was the result of a fall which allegedly occurred two years after the accident. Appellees argued that based upon the evidence indicating that appellant had recovered from the cervical laminectomy, appellees could be found liable for *wage losses accruing only to the point at which appellee claimed that appellant could have returned to work following the laminectomy.* As noted, the jury awarded appellant $18,500, representing *lost wages from the date of the accident to the date of the cervical laminectomy,*[3] but failed to award any sum for pain and suffering or for lost wages for any period of recuperation following the laminectomy.

The question of causation was a difficult one, and was persuasively argued by both sides. The jury was faced with the difficult task of ascertaining, based upon conflicting evidence, the respective percentages of negligence of the parties and the effect of the appellant's pre-existing condition as well as the cause of appellant's current injuries. As a result of appellant's incompetency, evidence concerning appellant's conduct at the time of the accident was minimal, a situation which made the decision as to the comparative negligence of the parties even more difficult.

**3.** The verdict sheet executed by the foreman of the jury found the driver of the truck and appellant both causatively negligent, assessed the percentage of the negligence of appellant at 50%, and found appellant's damages to be $18,500. The verdict sheet bears the handwritten notation next to the amount of the damages: "wages from 8–10–78 [the date of the accident] to 8–6–80 [the date of the laminectomy]".

Appellant contends that a new trial must be awarded because a portion of the charge of the court was a "compulsory direction", which misstated the applicable law and affected the decision of the jury upon the issue of the negligence of appellant. We are constrained to agree.

"It is well settled in our Commonwealth that when the propriety of the jury instruction of the trial court is at issue, those instructions must be viewed *in toto* to determine if any error has been committed. Unless the charge as a whole can be demonstrated to have caused prejudicial error, we will not reverse for isolated inaccuracies." *Riddle Memorial Hospital v. Dohan*, 504 Pa. 571, 576, 475 A.2d 1314, 1316 (1984). *Accord: Ellis v. Graves*, 385 Pa.Super. 168, 171, 560 A.2d 220, 222 (1989); *Jistarri v. Nappi*, 378 Pa.Super. 583, 588–89, 549 A.2d 210, 213 (1988); *Spearing v. Starcher*, 367 Pa.Super. 22, 28, 532 A.2d 36, 40 (1987). The court in this case provided the following instruction on the respective duties of the parties:

I first want to discuss the liability with you. The statute is clear that a person should not cross a roadway at any point other than within a crosswalk, at any intersection, or any marked crosswalk. If so, he should yield the right of way to all vehicles upon the roadway. However, we have to take that in view of the application of common sense.

We have here a plaintiff stepping off of a curb to cross the street or at least standing at a point near the curb in the middle of a roadway. We have to decide whether this plaintiff falls within the type of person that this accident [sic] was meant to cover. If the plaintiff was out there crossing in the middle of the street, there would be no doubt in our minds but here he is some distance, measurable distance, from the curb. The question is whether an automobile that is backing up, and whom the plaintiff may or may not have any idea was backing up, is covered by this section of the act which I will read again: "Every pedestrian crossing a roadway at any point other than within a crosswalk, at an intersection, or any marked

crosswalk, shall yield to the right of way to all vehicles upon the roadway." Do you understand that, ladies and gentlemen?

Now, we also have another statute which says, "No driver shall back a vehicle unless the movement can be made with safety and without interfering with other traffic and then only after yielding the right of way to moving traffic and pedestrians." So that this statute states that no driver shall back his car up without allowing pedestrians to have passed. You must yield the right of way to moving traffic and pedestrians.

Now, the interpretation of the law is for the Court. However, as I said, the facts are for the jury. You must decide, based upon the testimony you have heard, whether the plaintiff was in the act of crossing the roadway. *If you find that he was in the act of crossing the roadway at a point other than within a crosswalk or an intersection, then you should find him negligent.* If you find that the driver was backing his vehicle and that he was backing in a manner that could not be made with safety and without interfering with pedestrians, then you will find the driver negligent. Is that clear to you?

(N.T. 505–506) (emphasis supplied).

The italicized portion of the charge of the court was based, in part, upon Section 3543(a) of the Motor Vehicle Code, which provides:

> **(a) General rule.**—Every pedestrian crossing a roadway at any point other than within a crosswalk at any intersection or any marked crosswalk shall yield the right-of-way to all vehicles upon the roadway.

75 Pa.C.S. § 3543(a).

■ However, both the Supreme and Superior Courts, in considering the effect of this statute, have repeatedly held that the mere fact that a plaintiff crossed between intersections is insufficient to establish negligence on the part of the plaintiff. *See, e.g., McKniff v. Wilson,* 404 Pa. 647, 650, 172 A.2d 801, 803 (1961); *Shuman v. Nolfi,* 399 Pa. 211, 214, 159 A.2d 716, 718 (1960); *Nugent v. Joerger,* 387

Pa. 330, 332, 127 A.2d 697, 698 (1956); *Ulmer v. Hamilton,* 383 Pa. 398, 119 A.2d 266 (1956); *Moore v. Esso, Standard Oil Co.,* 364 Pa. 343, 347, 72 A.2d 117, 120 (1950); *Barney v. Foradas,* 305 Pa.Super. 404, 407, 451 A.2d 710, 712 (1982); *Lavely v. Wolota,* 253 Pa.Super. 196, 202, 384 A.2d 1298, 1302 (1978); *Gregorich v. Pepsi–Cola M.B. Co., Inc.,* 230 Pa.Super. 144, 148, 327 A.2d 171, 173 (1974); *Moore v. Zimmerman,* 221 Pa.Super. 359, 363, 292 A.2d 458, 460 (1972); *Dean v. Trembley,* 185 Pa.Super. 50, 51, 137 A.2d 880, 884 (1958).

Thus, the italicized portion of the charge, to which appellant timely objected, was certainly erroneous. The trial court subsequently indicated to counsel, in response to a question from the jury,[4] that it intended to repeat its earlier instructions. Counsel for appellant again argued that, based upon *Gregorich v. Pepsi–Cola, supra,* the compulsory direction on the duty of a pedestrian was a misstatement of the law. The court, after reviewing *Gregorich,* proceeded to charge the jury on the presumption of due care, and the respective duties of driver and pedestrian:

Now, I want to read to you what I had read earlier about the pedestrian and the motorist.

"Every pedestrian crossing a roadway at any point other than within a crosswalk, at an intersection, or any marked crosswalk shall yield the right of way to all vehicles upon the roadway."

Now, as I told you earlier, you have here a vehicle that was on the roadway and going in reverse. We have here a plaintiff who was crossing at a point other than within a crosswalk at an intersection or at a marked crosswalk. As the law points out, he should yield the right of way to all vehicles upon the roadway. Is that clear to you. Now, there is a section called "Limitation on Backing, Going in Reverse: No driver shall back a vehicle unless the movement can be made with safety and without interfering with other traffic and then only after yielding

4. The jury requested that they be provided "a copy or be reinformed as to the law regarding the driver and the pedestrian."

the right of way to moving traffic and pedestrians," and this plaintiff was a pedestrian. Is that clear to you? N.T. 477–478.

The trial judge, despite his earnest effort to afford the jurors a clear understanding of the law and thereby the parties a fair trial, misstated the applicable law in his original charge and failed, in his supplemental instructions, to rectify the error or clarify the issue for the jury. At the conclusion of the supplemental charge, the jury was still under the misapprehension that appellant could be found negligent solely because he had attempted to cross Ridge Avenue in the middle of the block.

The jury, instead, should have been instructed that a pedestrian may not cross between intersections without exercising due care, and whether such care has been maintained is a question of fact to be determined by the jury after being adequately instructed as to the applicable standard of care. *Brown v. Jones, supra* 404 Pa. 513 at 517–518, 172 A.2d 831 at 834 (1961).

In *Auel v. White*, 389 Pa. 208, 132 A.2d 350 (1957), the Pennsylvania Supreme Court set the standard of care to be used by a pedestrian when crossing a street other than at the intersection. The Court held:

It is well established that where a pedestrian traverses a street at other than a regular crossing he is bound to exercise a higher degree of care for his own safety than would be the case were he crossing at an intersection. *Harris v. DeFelice*, 379 Pa. 469, 475, 109 A.2d 174; *Rucheski v. Wisswesser*, 355 Pa. 400, 50 A.2d 291. The reason for the rule is apparent for he is crossing at a place where vehicular traffic could not be expected to anticipate a pedestrian. *Schweitzer v. Scranton Bus Co.*, 344 Pa. 249, 25 A.2d 156. It is equally well settled that it is the duty of a pedestrian to look before he undertakes a street crossing and to continue to look as he proceeds and

such duty is particularly incumbent upon one who tra-
verses a street between intersections.

*Auel v. White, supra* at 213, 132 A.2d at 353.

> The primary duty of a trial judge in charging a jury is to
> clarify the issues so that the jury may comprehend the
> questions they are to decide.... If the charge is wholly
> inadequate or not clear, or has a tendency to mislead and
> confuse rather than to clarify the issues, a new trial will
> be granted.... The functions of a trial judge embrace
> not only the duty to state to the jury correct principles of
> law applicable to the pending case and to endeavor to
> make such principles understandable in plain language,
> but they also impose upon the judge the duty to assist the
> jury in applying those principles to the issues presented
> to them for determination. *McEwan v. Yellow Cab Co.,*
> 182 Pa.Super. 219, 224, 126 A.2d 816, 819 (1956), quoting
> *Archer v. Pennsylvania Railroad Co.,* 166 Pa.Super.
> 538, 541, 72 A.2d 609, 611 (1950) (citations omitted).

*Spearing v. Starcher,* 367 Pa.Super. 22, 29, 532 A.2d 36, 40
(1987). The jury in the instant case was misled as to the
effect of a finding that appellant was crossing the street
between intersections when hit. Thus, the finding of the
jury as to the negligence of appellant cannot stand.

■ Appellee contends that the error was harmless since
the court charged on the presumption of due care. We find
this argument meritless. The court, in its charge, repeated-
ly instructed the jury that the presumption of due care
would be applicable only if they found that appellant's
incompetency "resulted from the accident".[5] Thus, the jury

---

**5.** The court's supplemental instruction on the presumption of due care
provided:

> When a person injured in an accident is rendered incompetent by
> his injuries or has lost his memory as a result of his injuries so that
> he is unable to testify as to how the accident occurred, the law
> presumes that at the time of the accident that person was using due
> care for his own safety. However, this presumption may be rebut-
> ted by evidence. If you find from a preponderance of the evidence
> that the injured person was not exercising such care, then you must
> determine whether the injured person's contributory negligence was
> a substantial factor in bringing about his harm.

never considered the presumption of due care in favor of appellant since, as evidenced by their verdict which restricted the award of damages to lost earnings only until the date of the laminectomy, they concluded that appellant's incompetency had *not* been caused by the accident.

Although we are not convinced that the presumption was applicable only where the party's incapacity could be proven to have resulted from the accident at issue, the question is moot in light of the abolition of the presumption of due care in favor of a deceased or incapacitated party by our Supreme Court in *Rice v. Shuman*, 513 Pa. 204, 519 A.2d 391 (1986). We are persuaded, contrary to the decision of the panel in *Vihlidal v. Braun*, 371 Pa.Super. 565, 538 A.2d 881 (1988), *allo. granted*, 520 Pa. 619, 554 A.2d 510, January 31, 1989, *appeal dismissed*, March 21, 1990, by our study of the majority and dissenting opinions [6] in *Rice* that

> Now, you recall I told you about presumptions. *Now you will have to determine whether the present incompetence of this man is a result of this accident and then decide whether he is entitled to this presumption.* Is that clear to you? *If you feel that his condition of incompetence came about as a result of this accident, then you can apply the presumption;* but, also remember, that however this presumption may be rebutted by evidence, if you find from a preponderance of the evidence that the injured person was not exercising such care, then you must determine whether the injured person's contributory negligence was a substantial factor in bringing about his harm.
> *So first you decide whether the incompetence resulted from this accident. If you find it did, then he is entitled to the presumption;* but then you must decide whether that presumption has been rebutted by the evidence. *If you find that his present condition or that his condition of incompetence did not result from this accident, then he is not entitled to the presumption at all.* Is that clear to you?
> N.T. 545–546 (emphasis supplied).

**6.** The dissenting opinions in *Rice* also suggest that the majority intended to abolish the presumption as to all parties.

> *[T]his* presumption—the presumption that a deceased or incompetent was using due care at the time of the accident—has been and should be given some weight as evidence to be weighed by the jury with any conflicting evidence, and the jury should be instructed to view the presumed fact (of due care) as the equivalent of testimony by the decedent or incompetent that he was using due care at the time of the accident.
> *Rice, supra*, 513 Pa. at 214, 519 A.2d at 397 (Larsen, J. dissenting) (emphasis in original).

the *Rice* Court invalidated the presumption of due care for all purposes. As noted by Chief Justice Nix,

"[a] definitive resolution by this Court of the impact of comparative negligence upon the continuing viability of the presumption of due care in the jurisdiction has heretofore proven elusive. The difficulty arose because of our failure to first focus upon the role that the presumption was perceived to fulfill and then to examine its success in achieving the anticipated result. Utilizing such an analysis *it becomes obvious that the limited benefit derived from the use of the presumption under prior law is clearly no longer present as a result of the adoption of a system of comparative negligence within this jurisdiction*".

*Rice, supra,* 513 Pa. at 209–10, 519 A.2d at 394 (emphasis supplied).

While this Court in *Vihlidal v. Braun, supra,* citing the failure of our Supreme Court to specifically overrule *Waddle v. Nelkin,* 511 Pa. 641, 515 A.2d 909 (1986), concluded that the applicability of *Rice* was limited to incapacitated defendants, we believe, upon further reflection, that the Court intended to abrogate the presumption of due care, regardless of whether it was invoked by plaintiff or defendant, and to substitute in its place "the recognition of the natural instinct of self-preservation [as] one of the factors that a jury may take into consideration in evaluating the evidence of negligence that is offered against any party so charged." *Id.,* 513 Pa. at 213, 519 A.2d at 396. In any event, as we have noted, our study of the charge of the court as a whole,[7] compels the conclusion that a new trial must be awarded.

7. The court also provided conflicting instructions upon the issue of contributory negligence:

The defendants claim that the plaintiff was contributorily negligent and the defendant has the burden of proving the existence of such negligence. *One who is contributorily negligent cannot recover damages for any injury he has sustained. It is not permissible to attempt to balance, compare, or match the negligence of one party against that of another.* You must, therefore, determine whether the plaintiff was negligent in that as an ordinary prudent person under all the circumstances then present he failed to exercise

Nor do we accept the contention that the award of a new trial should be limited to the issue of the comparative negligence of the parties. The jury in the instant case found by their verdict that, as a result of the accident, appellant was unable to work during the nineteen month period from the date of the accident to the date of appellant's cervical laminectomy, and awarded lost wages for that period. Despite uncontradicted evidence that appellant could not have returned to work until months after the laminectomy, the jury did not award appellant any sum for lost wages for the period of recovery following the laminectomy. Most importantly, in spite of uncontroverted evidence concerning pain and suffering, the jury did not award appellant any damages for pain and suffering or loss of life's pleasure.

The amount of the verdict in a personal injury action, which is an issue for the jury, will rarely be set aside as inadequate on appeal. However, inadequacy of a verdict will be found and a new trial awarded where the verdict is

> ... so inadequate as to indicate passion, prejudice, partiality, or corruption, or that the jury disregarded the instructions of the court, or in some instances, where there was a vital misapprehension or mistake on the part of the jury, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff, or, according to some of the cases, where, otherwise, there has been an evident failure of justice to the plain-

reasonable care for his own safety. If you find that the plaintiff was negligent, you must then determine whether the plaintiff's conduct was a substantial factor in bringing about any injury to the plaintiff. If your answer is affirmative on both scores, that is, that the plaintiff was negligent and that his negligent conduct was a substantial factor in causing his injury, then, in accordance with certain rules that I will give you later, you will have to make a determination as to whether your verdict should be for the defendant. Those rules, ladies and gentlemen, accord with the concept of comparative negligence. I will charge you later on as to comparative negligence.
N.T. 447–478 (emphasis supplied).

tiff, or where the award is so inadequate that it should not be permitted to stand.

*Deitrick v. Karnes,* 329 Pa.Super. 372, 376, 478 A.2d 835, 836–837 (1984). *Accord: Dawson v. Fowler,* 385 Pa.Super. 329, 331–32, 558 A.2d 565, 566–67 (1989); *Reimer v. Tien,* 356 Pa.Super. 192, 209–212, 514 A.2d 566, 574–575 (1986).

 The evidence established that appellant could not return to work on the day after the cervical laminectomy and thus was entitled to lost wages until his recovery from the surgical procedure. Moreover, since the jury found that the operation had been necessitated by the accident, appellant was entitled to a reasonable amount for pain and suffering for those injuries which the jury found to have been caused by the accident. *See: Bedillion v. Frazee,* 408 Pa. 281, 284, 183 A.2d 341, 343 (1962).

 As it is evident that the erroneous instructions tainted the verdict of the jury, the award of a new trial cannot be limited to the issue of the comparative negligence of the parties.

Judgment vacated. Case remanded. Jurisdiction relinquished.

TAMILIA, J., concurs in the result.