Marsha STONG, personal representative of the Estate of Robert Stong, Deceased, on behalf of the Estate of Robert Stong and on behalf of Marsha Stong and John Stong, the intestate heirs of Robert Stong,

v.

COMMONWEALTH of Pennsylvania, Department of Transportation and Sabrina C. Day.

Appeal of Commonwealth of Pennsylvania, Department of Transportation.

Marsha Stong, personal representative of the Estate of Robert Stong, Deceased, on behalf of the Estate of Robert Stong and on behalf of Marsha Stong and John Stong, the intestate heirs of Robert Stong, Appellants,

v.

Commonwealth of Pennsylvania Department of Transportation and Sabrina C. Day.

Commonwealth Court of Pennsylvania.

Argued Dec. 4, 2002.
Decided Feb. 24, 2003.

---

Daniel R. Goodemonte, Harrisburg, for appellant, Dept. of Transportation.

Gary T. Harris and Clifford A. Rieders, Williamsport, for appellant, M. Stong.

Jefferson J. Shipman, Harrisburg, for appellee, S. Day.

BEFORE: COLINS, President Judge, and McGINLEY, J., SMITH–RIBNER, J., PELLEGRINI, J., FRIEDMAN, J., COHN, J., and SIMPSON, J.

OPINION BY Judge SIMPSON.

Marsha Stong (Plaintiff) and the Commonwealth of Pennsylvania, Department of Transportation (PennDOT) appeal the order of the Court of Common Pleas of Lycoming County (trial court), which, following a jury verdict in favor of defendants PennDOT and Sabrina Day (Day), granted, in part, Plaintiff's post-trial motions and ordered a new trial as to PennDOT. PennDOT challenges the trial court's award of a new trial. Plaintiff challenges the denial of her motion for a new trial as to Day.

This matter arises out of a car-pedestrian accident between Robert Stong (Son) and an automobile driven by Day. The accident occurred on a bridge owned by PennDOT. Plaintiff filed a wrongful death and survival action against PennDOT and Day seeking damages.

On September 4, 1998, Son was walking home from school. Son stopped on the bridge.[1] As he stood on the east side of the bridge, leaning over the railing, two vehicles approached from opposite directions. Day's vehicle traveled north in the lane closest to Son. As the vehicles passed each other, Son moved from his position, turned away from Day's vehicle and raised his leg to take a step. At that point, he collided with Day's vehicle, was propelled onto the hood, struck the windshield, and was thrown 40 feet in the air. The impact resulted in his death.

A four day jury trial was held. At trial, Plaintiff presented testimony of several witnesses. John Counts, an eyewitness to the accident, testified by deposition. Counts explained the bridge has two traffic lanes and a guardrail, but no shoulder or pedestrian walkway. Prior to the accident, Counts observed Son leaning over the railing of the bridge looking down into the water. When Day's vehicle ap-

---

**1.** The bridge over East Mill Creek was built in 1938. Although the roadway of the bridge's surface was widened over the years, the bridge itself has not been widened. At the time of the accident, the distance from the curb along both edges of the bridge was 15½ inches to the fog line which is a solid white line along the side of the roadway. The fog line to the center was 104 inches and in the southbound lane it was 105 inches.

proached, Son rose quickly, turned counter-clockwise and began to step into the road. As he turned toward the roadway, Son walked into the side of Day's vehicle. Son collided with Day's vehicle before completing a full step. Counts noted that Day's vehicle did not slow prior to impact.

State Police Officer Arthur Paul Wilson, the investigating officer, interviewed Day immediately after the accident and noted her responses. Referring to his notes, Wilson testified Day saw Son with his back to the roadway as her vehicle approached. Day estimated her speed at approximately 40 miles per hour. Day slowed and attempted to move to the left as she crossed the bridge, but she was limited by a vehicle traveling in the opposite direction. When Day's vehicle reached Son, he stood up, turned counter-clockwise and walked into her vehicle.

Tammy Hamilton, a front seat passenger in Day's vehicle, testified Day did not swerve or brake prior to impact. She noted that Son was looking down into the water before the accident. Hamilton stated that as Day's vehicle approached, Son turned counter-clockwise toward the roadway. She further testified that Day did not see Son prior to the accident because after the accident, Day was unaware it had occurred.

Day explained that she traveled the bridge frequently for approximately two years. On the day of the accident, she approached the bridge traveling 42 miles per hour. As she approached, she saw Son leaning over the railing, and lightly applied her brakes. When Day arrived at the bridge she saw another vehicle approaching from the opposite direction. She stated that when Son turned from looking into the creek, he turned away from her. Day conceded that if she applied her brakes when she first saw Son, she probably would have avoided the collision.

Plaintiff also presented expert testimony by Lance Robson P.E., a civil engineer. Robson testified the bridge's lanes and shoulders are too narrow to comply with PennDOT standards. Robson further testified that PennDOT recognized the bridge was a hazard as of 1985. He opined that the narrowness of the bridge restricted Son's reaction time as Day's vehicle approached. Therefore, the narrow shoulder of the bridge directly related to the impact.

The trial court conducted a site view of the bridge, which enabled jurors to walk across the bridge, observe the bridge and view the highway approach to the bridge.

Ultimately, the jury returned a verdict in favor of both defendants. In response to special verdict questions, the jury found PennDOT negligent, but found its negligence was not a substantial factor in causing Son's death. The jury found Day not negligent.

Plaintiff filed post-trial motions seeking a new trial on the grounds the verdict was against the weight of the evidence. Plaintiff further argued the trial court improperly charged the jury regarding Son's comparative negligence. The trial court granted Plaintiff's motion for new trial as to PennDOT, but denied her motion as to Day. Both PennDOT and Plaintiff appealed. These appeals were consolidated for review.

■ Where a trial court orders a new trial because the weight of the evidence does not support the jury's findings, we review the record to determine whether the trial court palpably abused its discretion. *Morrison v. Dep't of Pub. Welfare (Woodville State Hosp.)*, 538 Pa. 122, 646 A.2d 565 (1994). A new trial is properly granted where the jury's verdict is so con-

trary to the evidence it shocks one's sense of justice. *Martin v. Evans,* 551 Pa. 496, 711 A.2d 458 (1998). "A new trial should be granted only where the verdict is so contrary to the evidence as to shock one's sense of justice [and not] where the evidence is conflicting [or] where the trial judge would have reached a different conclusion on the same facts." *Davis v. Mullen,* 565 Pa. 386, 773 A.2d 764, 766 (2001), quoting *Henery v. Shadle,* 443 Pa.Super. 331, 661 A.2d 439, 441 (1995), *allocatur denied,* 542 Pa. 670, 668 A.2d 1133 (1995). When the record discloses conflicting evidence, the new trial order must be reversed because the trial court improperly invaded the province of the jury. *Mammoccio v. 1818 Market P'ship,* 1999 Pa.Super. 144, 734 A.2d 23 (Pa.Super.1999).

## I. PennDOT's appeal

PennDOT contends a new trial was improperly granted because the jury's findings are supported by the evidence. PennDOT argues the trial court improperly invaded the province of the jury because the parties presented conflicting evidence, requiring a credibility determination. PennDOT further asserts it was reasonable for the jury to find the narrowness of the bridge was not a substantial factor in causing the accident.

In *Harman ex rel. Harman v. Borah,* 562 Pa. 455, 756 A.2d 1116 (2000), our Supreme Court, speaking through Madame Justice Newman, restated our standard and scope of review of a trial court order granting or denying a new trial.[2] Our review of a challenge to a new trial order begins with an analysis of the underlying conduct or omission by the trial court that formed the basis for the motion. *Id.*

When responding to a request for new trial, the trial court must follow a two-step process. First, it must decide whether one or more mistakes occurred at trial. *Id.* Second, if the court concludes a mistake occurred, it must determine whether the mistake was a sufficient basis for granting a new trial. *Id.* The harmless error doctrine underlies every decision to grant or deny a new trial. *Id.* A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate prejudice resulting from the mistake. *Id.*

As an appellate court, to review the two-step process of the trial court for granting a new trial, we also employ a two prong analysis. *Id.* First, we examine the decision of the trial court that a mistake occurred. At this first stage, we must apply the correct scope of review based on the rationale given by the trial court. *Id.* There are two possible scopes of review to apply when appellate courts are determining the propriety of an order granting or denying a new trial. *Id.* There is a narrow scope of review: "[w]here the trial court articulates a single mistake (or a finite set of mistakes), the appellate court's review is limited in scope to the stated reason, and the appellate court must review that reason under the appropriate standard" *Id.* (Citations omitted).

> [Conversely,] [i]f the trial court leaves open the possibility that reasons additional to those specifically mentioned might warrant a new trial, or orders a new trial 'in the interests of justice,' the appellate court applies a broad scope of review, examining the entire record for any reason sufficient to justify a new trial.

---

**2.** The *Harman* Court specifically stated that a review of a denial of a new trial requires the same analysis as a review of a grant.

*Id.* (citations omitted). Even under a narrow scope of review, the appellate court might still need to examine the entire record to determine if there is support for any of the reasons provided by the trial court. *Id.*

 The appropriate standard of review also controls this initial layer of analysis. If the mistake involved a discretionary act, the appellate court will review for an abuse of discretion. *Id.* If the mistake concerned an error of law, the court will scrutinize for legal error. If there were no mistakes at trial, the appellate court must reverse a decision by the trial court to grant a new trial because the trial court cannot order a new trial where no error of law or abuse of discretion occurred. *Id.*

Here, the trial court opined:

Listening to the witnesses during the course of the trial and considering the evidence carefully, as the charge was prepared and delivered to the jury, it became apparent the jury could reach a verdict on the issue of negligence that would either favor plaintiff against both defendants or against one of them or would completely favor defendants because the jury had several fact issues to resolve. However, once negligence was established, this court cannot understand under the facts and the law as to how such negligence could not be a substantial factor in causing the accident and resulting death of [Son].

*Stong v. Dep't of Transp.,* 56 Pa. D. & C. 4th 524, 544–45 (C.P. Lycoming 2001). However, the trial court further stated,

It is certainly possible in this case that the jury determined that Penn-DOT's negligence was not a substantial factor because they looked ahead to the issue as to whether the child himself was negligent. There was certainly sufficient evidence in this case to indicate

[Son] was negligent in not keeping an appropriate lookout for traffic, and that he may also have been negligent in not stopping on the bridge to look, and in not walking only within the 15½ inches allotted for the walkway, and in sticking his leg across the fog line and coming into contact with Day's automobile.

*Id.* at 549. (Emphasis added.). Therefore, the trial court acknowledged the jury could have found Son's conduct was the sole substantial factor in causing his harm. This is a reasonable theory which is supported by the evidence.

 We must consider the evidence in the light most favorable to the verdict winner. *Bey v. Sacks,* 789 A.2d 232 (Pa.Super.2001). Credibility determinations are within the sole province of the jury. *Yacoub v. Lehigh Valley Med. Assoc., P.C.,* 805 A.2d 579 (Pa.Super.2002) (physicians found negligent, but negligence not a substantial factor, defense verdict affirmed). Accordingly, a jury may believe all, part or none of the evidence presented. *Martin.* Further, the jury can believe any part of a witness' testimony they choose, and disregard any portion they disbelieve. *Id.* Here, because the witnesses presented conflicting versions of the cause of the accident, it was the jury's function to render a credibility determination. *Yacoub.*

 The record here contains sufficient causation evidence upon which the jury could conclude Son's own negligence was the sole substantial factor in causing his harm. Day stated to Officer Wilson that, as her vehicle approached, Son stood up, turned counter-clockwise and stepped toward the road into the side of her car. Reproduced Record (R.R.) at 27a. Day further explained that she slowed and attempted to move to the left as she crossed the bridge, but was limited by a vehicle traveling in the opposite direction. John

Counts, an independent witness testified when Day's vehicle approached, Son stood up, turned counterclockwise and started to step into the road. He stated "[Son's] leg probably crossed into the roadway as he took his step and ... walked right into the fender of the car." R.R. at 15a. Counts further stated if Son did not cross the fog line, he would not have been struck. R.R. at 18a. Moreover, both Counts and Day testified Son never looked in the direction of Day's vehicle before stepping into the roadway.

The jury also examined the bridge first-hand during their site view. The view enabled the jury to understand the testimony at trial and to weigh conflicting testimony and other evidence. *Lobozzo v. Adam Eidemiller, Inc.*, 437 Pa. 360, 263 A.2d 432 (1970). The view provided the jury the opportunity to evaluate the accuracy and credibility of the evidence presented at trial, and to resolve conflicts in the testimony. *Id.*

Based on the testimony and the site view, the jury could have found Son's own negligence was the sole substantial factor in causing his harm. The trial court, however, concluded the narrowness of the bridge was a substantial factor. Specifically, the trial court opined the bridge's narrow width, coupled with its lack of shoulders and pedestrian walkways, caused the accident. The trial court, however, was not at liberty to reassess the evidence and make its own credibility determinations simply because it would have reached a different conclusion. *Davis.* The trial court abused its discretion by disregarding the jury's credibility determinations and substituting its own.

Also, the trial court posited a jury mistake: the jury "looked ahead" to the issue of comparative negligence. We discern, however, no mistake in the jury's responses to special interrogatories. Initial-

ly, we note the interrogatories themselves comply with the suggested format. Pennsylvania Suggested Standard Jury Instructions § 3.03A. The jury is required to assess both negligence and causation of defendants first. *Id.* That occurred here. The jury addresses comparative negligence only when it finds a defendant negligent *and* that negligence a substantial factor in causing the incident. *Id.* That did not occur here. Assuming the jury found Son's conduct the sole substantial causative factor, there is no mistake evident in the order or content of its answers to special interrogatories. As such, the trial court abused its discretion by granting a new trial absent a mistake. *Harman; see James v. Nolan*, 418 Pa.Super. 425, 614 A.2d 709 (1994) (jury's findings that defendant negligent, but not a substantial factor were not inconsistent; jury could have found plaintiff's own conduct was sole substantial factor in causing harm).

As we agree with the trial court's conclusion that the jury could find "that PennDOT's negligence was not a substantial factor," we hold that the jury's verdict was not so contrary to the evidence so as to shock our sense of justice. Nor has our examination of the entire record disclosed a mistake at trial. Accordingly, we reverse and reinstate the jury's verdict as to PennDOT.

## II. Plaintiff's Appeal

### A.

Plaintiff contends the trial court erred by denying her motion for a new trial as to Day because the evidence established Day's actions constitute negligence as a matter of law. Plaintiff further argues there is a complete lack of evidence exculpating Day from liability.

■ The issue of whether a party is negligent is a question for the jury. *Duquesne Light Co. v. Woodland Hills Sch. Dist.*, 700 A.2d 1038 (Pa.Cmwlth.1997). The mere occurrence of an accident does not establish a defendant's negligence. *Id.* It is within the province of the jury to determine the reasonableness of each party's actions and to reconcile conflicting statements. *Seewagen v. Vanderkluet,* 338 Pa.Super. 534, 488 A.2d 21 (1985).

■ In support of its denial of a new trial as to Day, the trial court reasoned:

[t]he jury resolved the factual issues relating to ... Day ... to indicate that she did not act in a negligent way in operating her vehicle. This determination was based on substantial evidence to that effect. Under the evidence as presented to the jury, the jury could have concluded one of several factual scenarios, including: (a) that Sabrina Day never saw the child until she struck him; (b) that she saw the child as she testified, but took little or no evasive or precautionary action to avoid striking the child; [or (c) ] she saw the child. She braked lightly and moved as far to the left as she could without striking the other car and in doing so drove prudently as a reasonable driver would under the circumstances ... Obviously the jury chose the latter or a variant thereof, which they were entitled to do....

*Stong v. Dep't of Transp.*, 56 Pa. D. & C. 4th at 553–54. Under any of these circumstances, the jury had to determine the reasonableness of Day's actions. Therefore, a credibility determination was required. Based on the jury's findings, the trial court opined:

[Day's] testimony clearly permitted the jury to conclude that she saw the child and took note of his position, which at that point, was not necessarily one of peril. That as she proceeded across the bridge, she did so in an appropriate manner moving as far as she reasonably could to the left and away from the position of the child on the bridge, with her moving to the left being limited due to an approaching automobile and the narrowness of the bridge. The jury had a chance to view the bridge and the approaches and the amount of time that Defendant Day as the driver would have to observe and make such judgments. The evidence and the testimony was sufficient to support the finding Ms. Day acted prudently.

*Id.* at 555.

Credibility determinations are within the sole province of the jury. *Yacoub.* As such, the jury was free to believe any or all of Day's testimony. In this regard, the trial court noted, "[t]he jury must have accepted the credibility of defendant Day as she gave her testimony. The court observed that while Ms. Day's testimony was brief and to the point, she nevertheless delivered it in a convincing way." *Stong,* 56 Pa. D. & C. 4th at 555. Clearly, the jury findings are not so contrary to the evidence as to shock one's sense of justice. Thus, we discern no error from the trial court's denial of a new trial with respect to Day.

B.

Plaintiff next contends that she is entitled to a new trial as to Day because the jury was misled and confused by the jury instructions. In particular, Plaintiff contends the trial court's instructions regarding the duty of a pedestrian crossing between intersections were misleading. This argument fails.

In light of the jury's finding that Day was not negligent, Plaintiff's challenge to the trial court's charge on Son's possible comparative negligence is moot. *McCoy v.*

*Vankirk,* 377 Pa. 515, 105 A.2d 112 (1954). Nevertheless, as did our Supreme Court in *McCoy,* we examine the merits of Plaintiff's contention.

 When the correctness of the trial court's instructions is at issue, we view the instructions in their entirety to determine if an error was committed. *Agrecycle, Inc. v. City of Pittsburgh,* 783 A.2d 863 (Pa.Cmwlth.2001). We will not reverse for isolated inaccuracies; the charge as a whole must be shown to have caused prejudicial error. *Id.* Thus, to constitute reversible error, a jury instruction must be erroneous and harmful to the complaining party. *Id.*

Here, the trial court explained the concepts and burdens of proof associated with claims of Son's negligence. Notes of Testimony, May 31, 2001 (N.T.) at 10–18, 20, 23–25. Included in those instructions were correct explanations of the principles of negligence and ordinary care. *See* Pennsylvania Suggested Standard Jury Instructions (Civ) §§ 3.01, 3.02. Special instructions were repeatedly given to assist the jury in applying the principles to a child. N.T. at 13–14, 17–18; *see* Pennsylvania Suggested Standard Jury Instructions (Civ) § 3.10. Further, the trial court outlined the claims of PennDOT and Day regarding Son's acts and omissions including failing to look for and observe oncoming traffic, stepping into the travel lane, and negligence *per se* for a violation of the Vehicle Code. N.T. at 15–16. The trial court reminded the jurors:

> You must determine whether the Defendants have proven that Robert Stong, under all circumstances presented, failed to exercise reasonable care for his own protection.

*Id.* at 16.

Also, the trial court instructed the jury regarding the contention that Day was negligent *per se* for violations of the Ve-

hicle Code. *Id.* at 19. Immediately thereafter, the trial court instructed the jury regarding the contention that Son was negligent *per se* for a violation of the Vehicle Code provision requiring pedestrians crossing at other than a crosswalk or at an intersection to yield to oncoming traffic. *Id.* at 20. Both instructions conformed to the suggested format. Pennsylvania Suggested Standard Jury Instructions (Civ) § 3.30. *In addition,* the trial court instructed the jury:

> The mere fact that a Plaintiff crosses between intersections is insufficient to prove contributory negligence.

N.T. at 20.

 A pedestrian may not cross between intersections without exercising due care. *Bressler v. Dannon Yogurt,* 392 Pa.Super. 475, 573 A.2d 562 (1990). If a pedestrian crosses a street at other than a regular crossing the person is bound to exercise a higher degree of care for his own safety than if crossing at an intersection. *Id.* "The reason for this rule is apparent for he is crossing at a place where vehicular traffic could not be expected to anticipate a pedestrian." *Id.* at 567. (Citations omitted.)

Plaintiff relies on *Bressler.* In *Bressler,* the trial judge instructed the jury in a manner similar to the trial court's instruction on violation of the pedestrian crossing provision here. In addition, the *Bressler* trial judge said, "[i]f you find that [Plaintiff] was in the act of crossing the roadway at a point other than within a crosswalk or an intersection, then you should find him negligent." *Id.* at 565–66. Our Superior Court reversed. The Court noted that "the mere fact that a pedestrian crossed between intersections is insufficient to establish negligence." *Id.* at 566. The Court also noted that the trial court failed to rectify the error or clarify the issue.

■ *Bressler* does not compel a new trial as to Day for several reasons. First, the trial court here did not instruct the jury that crossing at a point other than within a crosswalk or at an intersection is negligence; rather, the trial court instructed the jury that a violation of the statute is negligence. Because the statute requires yielding but does not prohibit crossing, this distinction is significant. Second, unlike the trial judge in *Bressler*, the trial court here clarified the issue. Indeed, the trial court used language materially identical to the language in *Bressler* to do so. Third, the language used to clarify the issue was the exact language requested by Plaintiff. *Stong*, 56 Pa. D. & C. 4th at 557–58. Plaintiff cannot now be heard to complain that the requested instruction was insufficient to clarify the issue. Fourth, a review of the trial court's entire charge reveals an accurate, comprehensive and fair explanation of all pertinent legal principles.

Accordingly, we affirm the order denying a new trial as to Day.

Judge SMITH–RIBNER dissents.

### ORDER

AND NOW, this 24th day of February, 2003, the order of the Court of Common Pleas of Lycoming County is hereby affirmed to the extent it denies a new trial as to defendant Sabrina Day and the order is reversed to the extent that it grants a new trial to plaintiff Marsha Stong as to defendant Commonwealth of Pennsylvania, Department of Transportation.

### DISSENTING OPINION BY Judge FRIEDMAN.

I must respectfully, but strongly, dissent to the majority's determination in this case with respect to both the appeal of the Commonwealth of Pennsylvania, Department of Transportation (DOT) and the appeal of Marsha Stong (Stong). I would deny DOT's appeal and affirm the October 5, 2001, order of the Lycoming County Court of Common Pleas, 19th Judicial District (trial court) granting Stong a new trial as to defendant DOT; further, I would grant Stong's appeal and reverse the trial court's denial of Stong's request for a new trial as to defendant Sabrina C. Day (Day).

As the majority recounts, this case arises from a tragic car-pedestrian collision between eleven-year-old Robert Stong (Robert) and an automobile driven by Day on a bridge owned by DOT. Stong filed a wrongful death and survival action against both DOT and Day seeking to recover damages. In Count I of Stong's Complaint, Stong alleged that DOT's negligent failure to correct the dangerous and defective conditions of the bridge, i.e., its narrow lanes and absence of adequate shoulders, was a direct, substantial and proximate cause of Robert's death. In Count II of the Complaint, Stong alleged that Day's negligent operation of her vehicle, including her failure to properly slow, swerve or take evasive actions to avoid striking Robert, also was a direct, substantial and proximate cause of his injuries and death. (O.R., Stong's Complaint.)

A jury trial began on May 25, 2001, during which various witnesses presented testimony as to the condition of the bridge and the way in which the accident happened. Following trial, the jury issued a verdict in favor of defendants DOT and Day. The jury, in answer to special verdict questions, found that DOT was negligent but that the negligence was *not* a substantial factor in causing Robert's death. The jury found that Day was not negligent. Importantly, because of these responses, the jury did not reach the question of whether Robert was contributorily negli-

gent or whether his negligence, if any, was a substantial factor in causing the fatal accident. (S.R. at 37B–38B.) Subsequently, Stong filed post-trial motions seeking judgment notwithstanding the verdict (JNOV) or a new trial, (R.R. at 157a–69a), asserting that the verdict was against the weight of the evidence and contrary to law with respect to both defendants.

In an order dated October 5, 2001, the trial court granted Stong's request for a new trial as to DOT but otherwise denied Stong's motion for post-trial relief. In an opinion issued in support of its order, the trial court explained its refusal to accept the jury verdict with regard to DOT, stating, "once [DOT's] negligence was established[,] this [c]ourt cannot understand under the facts and the law as to how such negligence could not be a substantial factor in causing the accident and resulting death of Robert Stong." (Trial ct. op. at 21–22.) However, upholding the jury's verdict that Day was not negligent, the trial court concluded that "the evidence and the testimony was sufficient to support the finding Ms. Day operated prudently." (Trial ct. op. at 31.) Both DOT and Stong appealed from the trial court's order.

Initially, I note that this court's scope of review of a trial court's ruling on a motion for a new trial is limited to determining whether the trial court committed an error of law controlling the outcome of the case or abused its discretion. *Williams v. Southeastern Pennsylvania Transportation Authority,* 741 A.2d 848 (Pa.Cmwlth. 1999), *appeal denied,* 563 Pa. 680, 759 A.2d 925 (2000). A new trial should be awarded when the jury's verdict is so contrary to the weight of the evidence as to shock one's sense of justice, and the award of a new trial is imperative so that right may be given another opportunity to prevail. *Thompson v. City of Philadelphia,* 507 Pa. 592, 493 A.2d 669 (1985). If support for the trial court's decision to grant a motion for a new trial is found in the record, the trial court has acted within the limits of its judicial discretion and the order must be affirmed. *Randt v. Abex Corporation,* 448 Pa.Super. 224, 671 A.2d 228 (1996). A new trial should not be granted because of a mere conflict in testimony or because the trial judge on the same facts would have arrived at a different conclusion. *Thompson.* It is with these standards in mind that I now consider the appeals before us.

## I. DOT's Appeal

The jury here found that DOT negligently failed to remedy the dangerous condition of the bridge. However, for a negligent actor to be liable for another's harm, the actor's negligence must be a legal cause of the harm.[1] Restatement (Second) of Torts § 430 (1965). In an analysis of "legal cause," the question becomes whether the defendant's negligent conduct was a "substantial factor" in bringing about the harm,[2] *Ford v. Jeffries,* 474 Pa. 588, 379 A.2d 111 (1977); Restatement (Second) of

---

1. To set forth a prima facie case in a negligence action, a plaintiff must establish that: (1) he was owed a duty of care; (2) the duty was breached; (3) he was injured; and (4) the breach of duty was the proximate, or legal, cause of his injuries. *Summers v. Giant Food Stores, Inc.,* 743 A.2d 498 (Pa.Super.1999), *appeal denied,* 564 Pa. 713, 764 A.2d 1071 (2001).

2. The word "substantial" is used to denote the fact that the defendant's conduct has such

an effect in producing the harm as to lead reasonable persons to regard it as a cause, using that word in the popular sense, which connotes the idea of responsibility, rather than in the so-called "philosophical sense," which includes all those events without which the harm would not have occurred but yet had so insignificant an effect that no ordinary mind would think of them as causes. Restatement (Second) of Torts § 431 cmt. a (1965).

Torts § 431(a) (1965), and, in this case, the jury concluded that DOT's negligence did not fit within this definition. Whether a defendant's negligent conduct is a substantial factor in causing an injury to another is a question for the jury *where reasonable minds may differ in that regard.* See *Vattimo v. Lower Bucks Hospital, Inc.,* 502 Pa. 241, 465 A.2d 1231 (1983); *Ford;* Restatement (Second) of Torts § 434 (1965).

On appeal, DOT maintains that evidence was introduced on which reasonable minds could differ and that the record contained substantial evidence from which the jury could determine that DOT's negligence was not a substantial factor in bringing about Robert's harm. Specifically, DOT points to testimony that Robert would not have been struck if he had stayed to the right of the fog line and not entered the road, that Robert never looked before entering the roadway, and that Day never left her lane. DOT contends that it was perfectly reasonable for the jury to conclude from this evidence that, notwithstanding the narrow bridge, Robert's negligent failure to look for oncoming traffic before stepping into the roadway was the sole cause of the accident. Thus, DOT argues that the trial court improperly invaded the province of the jury when it substituted its judgment on issues of credibility and causation and abrogated the jury's verdict. Unlike the majority, I would disagree.

I recognize that credibility determinations are for a jury and that, where there is conflicting evidence regarding causation, a jury is entitled to believe, or disregard, any portion of a witness's testimony.

*Randt.* However, contrary to DOT's claim, accepted by the majority, I disagree that the record here contains causation evidence which could lead a jury to believe that the dangerous condition of the bridge was not a legal cause, i.e., a substantial factor, in bringing about Robert's death. *All* the witnesses noted the narrowness of the bridge and its lack of shoulders or pedestrian walkways, and *all* remarked on the way this factor contributed to the accident. The testimony was clear that Robert was at the bridge curb, looking over the railing, when cars approached from either end of the bridge and that, in leaving this position, Robert merely stood and turned; the boy had not completed even one step when he collided with Day's vehicle, even though that car remained in its travel lane.

A defendant's negligent conduct is not a substantial factor in bringing about harm to another if the harm would have been sustained even if the defendant had not been negligent. *See* Restatement (Second) of Torts § 432(1) (1965).[3] With its argument, DOT suggests that this is the case here. However, the evidence in the record establishes that, absent the dangerous condition of the bridge, the fatal collision between Robert and Day's vehicle never would have occurred. Indeed, in considering the *undisputed* evidence, the trial court was prompted to remark, "[c]ertainly, had there been anything near a sufficiently wide walkway for Robert Stong to be on, his turning and lifting a leg without even taking one step would not have resulted in his being struck by Ms. Day's automobile." (Trial ct. op. at 24.)

**3.** This subsection is most often applied where the actor's negligent conduct consists of a failure to take required precautions to protect another's person or property. In such a case, if the same harm, both in character and extent, would have been sustained even if the actor had taken the proper precautions, his failure to do so cannot be a substantial factor in producing the harm. Restatement (Second) of Torts § 432(1) cmt. b (1965).

Moreover, if a negligent act creates or increases the risk of a particular harm, and that harm comes about, the negligent act should be regarded as a substantial factor. *See* Restatement (Second) of Torts § 435 (1965). In fact, "if the actor should have realized that his conduct might cause harm to another in substantially the manner in which it is brought about, the harm is *universally* regarded as the legal consequence of the actor's negligence." Restatement (Second) of Torts § 435 cmt. b (1965) (emphasis added). Here, the *undisputed* testimony indicates that this bridge has heavy vehicular traffic and is used regularly by pedestrians, yet the shoulder is so narrow that a person crossing the bridge is unable to make even a normal movement without intruding on the roadway. Clearly, DOT should have realized that its failure to widen the bridge, or take other pedestrian safeguards, might cause injury to a pedestrian when, because two vehicles are crossing the bridge at the same time, the customary and necessary buffer zone cannot be provided.[4]

In this case, the trial judge determined that, to avoid an injustice to Stong, it was necessary to grant a new trial relating to DOT's liability. The trial judge reasoned that, once the jury found DOT negligent with regard to the narrowness of the bridge, it was not possible under the facts and the law for that narrowness to be insignificant in bringing about the occurrence of the accident, particularly where the jury found that Day was not negligent at all. Given the factual context, I would conclude that the trial court did not abuse its discretion when it found that the jury's contrary result shocked its sense of justice. In a cogent and persuasive analysis, the trial court stated:

The testimony and site view led the jury to find that [DOT] was negligent. Such a determination was clearly and firmly supported by the evidence. There is no denying the fact that [DOT] was very much aware of the heavy traffic use of this bridge, its use by pedestrians and bicycles and its extreme narrowness as evident by the fact that [DOT] continuously widened the traffic lanes since the bridge had been constructed in 1938 to accommodate the increased traffic and the increased width of automobiles. As a result[,] the width between the edge of the rebuilt sides of the bridge to the fog line that marked the edge of the traveled lanes for vehicles had been reduced to 15½ inches. There are many bases upon which [DOT] could have been negligent. One of the most obvious is that [DOT] did not provide for adequate width for pedestrian and non-motor travel across this well-used bridge. Given the high volume of traffic, over 4,700 vehicles per day, it was certainly obvious to [DOT] that vehicles would pass by each other as they crossed the bridge. [DOT] was also likely aware of the . . . custom vehicles had of driving into the opposite lane when passing by a pedestrian or bicyclist as testified by Mr. Robson. . . . If the jury found, as it must have, that [Day] did all she could to avoid the accident, including driving as far to the left as the bridge and traffic permitted, then the bridge's narrow width had to be a legal cause of the accident.

(Trial ct. op at 22–23.) Because I agree with this reasoning, I would deny DOT's appeal and affirm the trial court to the extent that it grants a new trial with re-

---

4. During his testimony, Lance Robson noted that, while he was on the bridge doing his investigation, the traffic coming toward him would go two to three feet into the opposing lane to leave a proper buffer for him. (R.R. at 71a.)

gard to DOT's liability.[5]

## II. Stong's Appeal

As stated previously, a new trial will not be granted on the basis of a weight of the evidence claim unless the evidence supporting the verdict is so inherently improbable or at a variance with admitted or proven facts or with ordinary experience as to render the verdict shocking to the court's sense of justice. *Rittenhouse v. Hanks*, 777 A.2d 1113 (Pa.Super.2001), *appeal denied*, 568 Pa. 686, 796 A.2d 318 (2002). In such a case, the award of a new trial is imperative so that right may be given another opportunity to prevail. *Randt*. Stong asserts that this is such a case and that the trial court erred in determining that the evidence adduced at trial failed to establish negligence on the part of Day. Unlike the majority, I would agree.

In taking this position, I recognize that an appellate court may not substitute its opinion concerning the weight of the evidence for that of a trial judge. *Summers v. Giant Food Stores, Inc.*, 743 A.2d 498 (Pa.Super.1999), *appeal denied*, 564 Pa. 713, 764 A.2d 1071 (2001). Therefore, in reviewing the record to determine the propriety of a new trial here, this court must consider whether the trial judge's reasons and factual basis for denying a new trial with respect to Day can be supported; unless facts and inferences of record disclose a palpable abuse of discretion, the judge's reasons should prevail. *Thompson; Summers*. However, after careful review of the record here, viewed in the light most favorable to Day, the verdict winner, I must conclude that it neither supports the jury's verdict nor the reasoning employed by the trial court to uphold that verdict.

In sustaining the jury's determination that Day was not negligent, the trial court provided the following analysis:

The jury resolved the factual issues relating to Sabrina Day, driver of the automobile, to indicate that she did not act in a negligent way in operating her vehicle. This determination was based on substantial evidence to that effect. Under the evidence as presented to the jury, the jury could have concluded one of several possible factual scenarios, including: (a) that Sabrina Day never saw the child until she struck him; [6] (b) that she saw the child as she testified, but took little or no evasive or precautionary action to avoid striking the child; [7] [or (c)] she saw the child. She braked lightly and moved as far to the left as she could have without striking the other car and[,] in doing so[,] drove prudently as a reasonable driver would do under the circumstances ([DOT's] negligence was obviously one of those circumstances, i.e., they may have considered [that the] bridge width severely limited Ms. Day's ability to avoid the

---

**5.** I also agree with the trial court that the only possible explanation for the jury's determination that DOT's negligence was not a substantial factor in bringing about the harm was because the jury looked ahead to the issue of whether the child himself was negligent. However, "such speculation does not alleviate the erroneous nature of the jury's conclusion that [DOT's] negligence was *not* a substantial factor in bringing about [Robert's] harm, especially since the jury did not answer the interrogatories related to contributory negligence." *Craft v. Hetherly*, 700 A.2d 520, 523 (Pa.Super.1997).

**6.** *See* Tammy Hamilton's testimony, R.R. at 86a.

**7.** *See* Tammy Hamilton's testimony, R.R. at 83a, 85a; John Counts' testimony, R.R. at 10a, 15a, 18a; Lance Robson's testimony, R.R. at 61a, 75a–76a.

accident).[8] Obviously, the jury chose the latter[,] or a variant thereof, which they were entitled to do.
(Trial ct. op. at 29.) Thus, the trial court concluded that the jury accepted Day's testimony as credible and that this testimony was sufficient to support the jury's finding that Day operated her vehicle prudently.[9]

Challenging this reasoning, Stong asserts that, even if the jury believed that Day moved over some amount and slowed her car "a little," this still was insufficient to constitute prudent, non-negligent action. According to Stong, Robert was in a position of danger while on the narrow bridge, as evidenced by the jury verdict finding DOT negligent for maintaining the bridge in that condition. Thus, Stong asserts that the only safe, reasonable and non-negligent course for Day to have taken was to have slowed her vehicle to the point where the other vehicle crossed the bridge first, even if this meant stopping her vehicle, and then to have moved as far over as possible while crossing the bridge. Stong contends that anything less represents Day's failure to have her vehicle under sufficient control to prevent injuring Robert, and, therefore, when the jury did not recognize this clear negligence on the part of Day, the trial court should have granted JNOV or ordered a new trial.

Even without accepting the extreme precautions suggested by Stong as the only non-negligent behavior,[10] I must reject the trial court's reasons for denying a new trial here because those reasons are belied by the irrefutable physical facts of the case.

Day claims that she slowed slightly and moved as far to the *left* as safely possible in order to avoid hitting Robert, and the trial court bases its decision on the obvious fact that the jury believed this version of events. However, I note that Day's traffic lane was 104 inches wide and Day's car was sixty-eight inches wide; thus, if Day had gone as far to the left as possible, there would have been thirty-six inches of roadway before the fog line and up to another fifteen inches of shoulder past the fog line. There is no evidence that Robert took more than a half step toward the roadway, and, clearly, a half step would not have carried Robert over a distance exceeding four feet. Yet, the *undisputed* testimony was that this half step took Robert just over the fog line and into the side of Day's car. Therefore, the inevitable conclusion must be drawn that Day's car was *not* positioned in the lane as far to the left as safely possible. In fact, Day's car had to have been positioned as far to the *right* as possible in the lane. To conclude

8. *See* Officer Arthur Paul Wilson's testimony, R.R. at 27a; Day's testimony, R.R. at 109a–12a.

9. As described by the trial court, Day "saw the child and took note of his position, which at that point was not necessarily one of peril. [A]s she proceeded across the bridge, she did so in an appropriate manner moving as far as she reasonably could to the left and away from the position of the child on the bridge, ·with her moving to the left limited due to an approaching automobile and the narrowness of the bridge." (Trial ct. op. at 30–31.)

10. Nevertheless, based on the description of the bridge, I must acknowledge Stong's point.

It seems that the only way a pedestrian or bicyclist can cross this bridge in absolute safety at the same time that two cars attempt to cross in opposite directions is if: (1) the pedestrian stops and waits at the bridge curb until the cars pass; or (2) the car closest to the pedestrian stops to let the other car proceed, so that the closer car can move safely away from the pedestrian. I do not believe that Day was entitled to assume that Robert would do the former, particularly when she admitted that she did not believe Robert was aware of her vehicle on the road, and it is clear that Day did not do the latter.

otherwise is to accept a mathematical impossibility.

Of course, the jury might have believed that Robert was not in any peril until he placed himself in that position when he turned and stepped into the roadway without looking for oncoming traffic.[11] In that case, the jury may have believed that Day acted prudently merely by staying in her own lane and adhering to the forty mile-per-hour speed limit. Although such a conclusion might be proper under ordinary circumstances, it ignores the facts and law presented here. In this regard, I note the trial judge's charge to the jury that "if you find that ... Day violated ... section [3361] of the Vehicle Code, then you must find that she was negligent." (R.R. at 150a.) That section provides, in pertinent part:

> No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when ... traveling upon any narrow or winding roadway and when special hazards exist with respect to pedestrians or other traffic or by reason of ... highway conditions.

75 Pa.C.S. § 3361. The trial court also instructed the jury in accordance with *Fama v. Smith*, 303 Pa.Super. 414, 449 A.2d 755 (1982). In pertinent part, that charge states as follows:

> The driver of an automobile on a public highway is guilty of negligence is [sic] the driver in the exercise of due care fails to control his or her vehicle in such a way as to avoid striking and injuring a child who is in a place of danger[,] or where there is a reasonable apprehension that a child might run into a place of danger for a sufficient amount of time for the driver to observe the child and bring his or her vehicle under control. Where there is a reasonable apprehension that a child might run into or move into a place of danger or injury by an automobile, there is a duty imposed on the operator thereof to exercise a higher degree of care than under ordinary circumstances; and to have the car under such control that it can be stopped on the shortest possible notice that harm may be inflicted.... In other words, it is necessary for the evidence in the [Stongs'] case to establish that the child was visible to the driver for a sufficient length of time so as to give the driver a reasonable opportunity to avoid the accident.

(R.R. at 151a–52a.)

In this case, Day admits that she knew the bridge was narrow, that she saw Robert as soon as she entered the bridge but did not believe Robert saw her, that a car coming in the opposite direction restricted her movement away from Robert's position and that she probably could have avoided the accident by braking when she saw Robert. Despite these extraordinary circumstances, Day concedes that she slowed very little and, although she claims to have moved as far as possible to the left, the irrefutable facts say otherwise. Therefore, even if the jury were to believe Day's account of the events, they could not say that she took the precautions necessitated

---

11. The jury seems to hold Robert virtually 100% responsible for the accident. However, as noted previously, the jury never reached the question of Robert's contributory negligence.

by the circumstances and proceeded with the care those circumstances required.

Accordingly, I would hold that a new trial is warranted as to the liability of Day, and I would reverse the trial court's denial of Stong's post-trial motion requesting such trial.[12]

Judge SMITH–RIBNER joins in this dissent.

---

12. In her appeal, Stong also asserted that the trial court improperly charged the jury with respect to Robert's negligence, and, in its opinion, the trial court explained why it found no merit in Stong's assertion that the trial court's charge to the jury on the duty of a pedestrian crossing between intersections was erroneous and unfairly prejudicial to Stong. (Trial ct. op. at 31–33.) However, because of my disposition on Stong's first challenge to the denial of a new trial with regard to Day, I would not need to address this additional charge of error.