# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joan P. Grove                 :

                                 :

             v.               :     No. 132 C.D. 2017

                                 :

Port Authority of Allegheny County,  :

                 Appellant    :

Joan P. Grove                 :

                                 :

             v.               :     No. 195 C.D. 2017

                                 :     Argued: November 14, 2017

Port Authority of Allegheny County  :

                                 :

Appeal of:  Joan P. Grove       :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge

**OPINION**
**BY JUDGE SIMPSON**           **FILED: January 12, 2018**

        Before this Court are consolidated appeals following the entry of judgment after a jury verdict finding that the Port Authority of Allegheny County (Port Authority) and Joan P. Grove (Plaintiff) each bore 50% of the negligence that was the cause of Plaintiff's injuries after she was struck by a Port Authority bus. In its appeal, the Port Authority asserts the Court of Common Pleas of Allegheny County (trial court) erred in denying its post-trial motions seeking a new trial as a result of the trial court's failure to charge the jury on negligence *per se* based on certain Vehicle Code provisions relating to duties of pedestrians.[1] In her appeal, Plaintiff challenges the trial court's award of delay damages based on the molded

---

[1] 75 Pa. C.S. §§101-9805.

recovery rather than the amount of compensatory damages actually awarded. After review, we are constrained to reverse and remand for a new trial based on the trial court's failure to adequately charge the jury regarding legal principles relevant to the jury's apportionment of comparative negligence. As a result, we dismiss Plaintiff's appeal as moot.

## I. Background

In June 2014, Plaintiff was walking on a sidewalk that ran along Sixth Avenue in downtown Pittsburgh. Intersecting Sixth Avenue was Montour Way, a one-way alley that Plaintiff had to cross in order to reach her bus stop. Motor vehicle traffic on Sixth Avenue was to Plaintiff's left. When Plaintiff reached Montour Way there was a car stopped in the pedestrian crosswalk of the alley. Another pedestrian, Dante Anglin (Anglin), was walking in the same direction as Plaintiff. Anglin entered Montour Way ahead of Plaintiff, and he was forced to veer to his left because of the car that was stopped in Montour Way's pedestrian crosswalk. When Plaintiff arrived at the intersection, she also stepped around the vehicle and passed Anglin on the left side. A Port Authority bus traveling down Sixth Avenue struck Plaintiff.

Before striking Plaintiff, the bus was traveling down Sixth Avenue at approximately nine miles per hour when it encountered a stopped vehicle in its lane attempting to turn left. The bus maneuvered around the vehicle, and it struck Plaintiff. Plaintiff fell and hit her head on the pavement, and Plaintiff's right leg was trapped under the bus. The bus's tire ran over Plaintiff's leg and dragged Plaintiff along the ground. The bus driver, Betty Cunningham (Cunningham), did not realize she struck Plaintiff until a passenger on the bus, Joyce Broadwick (Broadwick), yelled for her to stop the bus. Plaintiff's leg was almost completely severed. Over

2

the next three months, Plaintiff underwent numerous surgeries in an effort to save her leg. Ultimately, Plaintiff's leg was amputated just below the knee, and she was fitted with a prosthesis.

Plaintiff subsequently filed suit against the Port Authority. She alleged that Cunningham caused her injuries by negligently passing the stopped vehicle in her lane that was attempting to turn left as Sixth Avenue is only marked as a two-lane road. In so doing, Plaintiff contended Cunningham drove the bus up on the curb and encroached on the adjoining intersection of Montour Way.

At trial, while admitting she could not walk on the crosswalk on Montour Way because it was blocked by the vehicle, Plaintiff alleged that when the bus struck her, she was still on Montour Way and her foot did not venture onto Sixth Avenue. Aside from Plaintiff's testimony, two other witnesses offered testimony on this issue. Anglin testified Plaintiff was two feet outside of the crosswalk on Montour Way and was on Sixth Avenue when the bus struck her. Broadwick was unable to testify definitively on this issue because she only observed the top of Plaintiff's head for about a second before the bus struck Plaintiff. Nevertheless, Broadwick testified that she witnessed Plaintiff step onto Sixth Avenue into the path of the bus.

Shortly before the trial concluded, both parties submitted proposed jury instructions. The Port Authority requested that the trial court provide the jury with summaries of four Vehicle Code provisions regarding the duties of care for

pedestrians. The trial court rejected those proposed points for charge. The trial court's entire charge to the jury regarding negligence was as follows:

> I will now explain what negligence is. A person must act in a reasonably careful manner to avoid injuring others. The care required varies according to the circumstances and degree of danger at a particular time.
>
> You must decide how a reasonably careful person would act under the circumstances established by the evidence in this case. A person who does something a reasonably careful person would not do under the circumstances is negligent. A person also can be negligent by failing to act. A person who fails to do something a reasonably careful person would do under the circumstances is negligent.

Reproduced Record (R.R.) at 304a.

After the jury began its deliberations, it returned with three questions, the first of which was: "What is the pedestrian right away [sic] law in the City of Pittsburgh?" R.R. at 451a. The Port Authority again requested that the trial court provide the jury with its proposed points for charge regarding the duties of pedestrians set forth in the Vehicle Code. The trial court denied the request on the ground that Plaintiff never received a citation under any of those statutory provisions. As such, the trial court deemed the proposed instructions unnecessary as the duties of pedestrians under those provisions were not at issue, and it informed the jury that "the right of way law is not an issue in this case." R.R. at 332a. The jury resumed its deliberations.

4

Ultimately, the jury returned a verdict finding both parties at fault and apportioning negligence at 50% each, along with a verdict of $2,731,000, which was reduced by Plaintiff's comparative negligence to $1,365,500. The trial court molded the verdict to $250,000 pursuant to the statutory damage cap for suits against Commonwealth agencies. See 42 Pa. C.S. §8528(b).

The Port Authority filed post-trial motions, arguing that the trial court's refusal to instruct the jury on negligence *per se* resulted in severe prejudice to the Port Authority, and, therefore, it was entitled to a new trial. Ultimately, the trial court determined that its failure to charge the jury on negligence *per se* was harmless because the jury found Plaintiff negligent; thus, the absence of a *per se* charge did not impact the jury's negligence determination. To that end, the trial court reasoned, because the jury found Plaintiff negligent, it would have made no difference to instruct the jury on negligence *per se* as negligence *per se* encompasses only the elements of duty and breach rather than causation. Had the jury found Plaintiff negligent *per se*, the trial court reasoned, it still would have had to factor in her comparative negligence. Therefore, the trial court determined that the Port Authority suffered no prejudice as a result of the trial court's refusal to charge the jury on negligence *per se*, and it committed no error in declining to instruct the jury on negligence *per se*.

Plaintiff filed a motion for delay damages contending that rather than $11,444.64, the delay damages based on the statutory cap of $250,000, she was entitled to $62,635.37 in delay damages based on the initial molded verdict of

$1,365,500.  Citing <u>Allen v. Mellinger</u>, 784 A.2d 762 (Pa. 2001), the trial court denied Plaintiff's motion.  Both parties appealed to this Court.

## II. Discussion

In responding to a request for a new trial, a trial court must follow a two-step process.  <u>Daddona v. Thind</u>, 891 A.2d 786 (Pa. Cmwlth. 2006).  First, it must decide whether one or more mistakes occurred at trial.  <u>Id.</u>  Second, if the court concludes a mistake occurred, it must determine whether the mistake was a sufficient basis for granting a new trial.  <u>Id.</u>  The harmless error doctrine underlies every decision to grant or deny a new trial.  <u>Id.</u>  A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would rule differently; the moving party must show prejudice resulting from the mistake.  <u>Id.</u>

As an appellate court, to review the two-step process of the trial court for granting a new trial, we also employ a two-prong analysis.  <u>Id.</u>  First, we examine the decision of the trial court that a mistake occurred.  In so doing, we must apply the appropriate standard of review.  <u>Id.</u>  If the alleged mistake involved an error of law, we must scrutinize for legal error.  <u>Id.</u>  If, on the other hand, the alleged mistake involved a discretionary act, we must review for an abuse of discretion.  <u>Id.</u>  If there were no mistakes at trial, we must affirm a decision by the trial court to deny a new trial as the appellate court cannot order a new trial where no error of law or abuse of discretion occurred.  <u>Id.</u>

## A. Jury Instructions

## 1. Contentions

In support of its appeal, the Port Authority argues that the trial court was bound to instruct the jury on the law applicable to the evidence in the record. It asserts the facts in evidence proved that Plaintiff crossed an alley outside of the marked pedestrian crosswalk and in doing so stepped out onto Sixth Avenue without ever looking for vehicular traffic and directly into the path of the passing Port Authority bus that struck her. The Port Authority contends it submitted written proposed points for charge requesting an instruction on negligence *per se*, including the Vehicle Code provisions regarding the duties of pedestrians. It argues that the requested Vehicle Code provisions address the duties of care of pedestrians, prohibit pedestrians from leaving a curb or other place of safety and walking into the path of a vehicle, and yielding the right of way to all vehicles on the roadway. The Port Authority maintains the trial court denied these requested points for charge. It asserts the trial court's refusal constitutes an abuse of discretion that resulted in prejudice to the Port Authority, and is fundamental error.

The Port Authority further contends that, during deliberations, the jury submitted written questions to the trial court, which included: "What is the pedestrian right-away [sic] law in the City of Pittsburgh?" R.R. at 451a. The Port Authority argues its counsel again urged the trial court to instruct the jury on the requested points for charge, including negligence *per se* and the Vehicle Code provisions pertaining to pedestrians. It asserts the trial judge again refused. Instead, the Port Authority asserts, the trial court provided the following answer to the jury: "[T]he right of way law is not an issue in this case." R.R. at 332a.

7

The Port Authority maintains that the jury astutely recognized that the right of way law was pertinent to its decision and requested guidance from the trial court for such an instruction. Unfortunately, it argues, not only did the trial court decline to provide the required guidance, it misled the jury by giving an inaccurate answer. The Port Authority contends that refusing to provide the requested instruction and providing an incorrect answer in response to the jury's question resulted in severe prejudice to the Port Authority, which likely altered the outcome of the jury verdict. As such, the Port Authority asserts, it is entitled to a new trial.

Plaintiff counters that, on appeal, the Port Authority raises one argument: that the trial court had two opportunities to instruct the jury on negligence *per se*, first, during the initial jury charge; and second, in response to a jury question. Plaintiff points out that the Port Authority argues that the trial court abused its discretion by not giving that instruction.

Plaintiff asserts that the Port Authority first sought three non-standard instructions directing the jury to find Plaintiff negligent *per se* if she was found to be outside of the crosswalk, or otherwise in the bus's roadway at the time of the accident. Additionally, Plaintiff argues, the Port Authority sought that same negligence *per se* instruction in response to the jury's question as to the pedestrian right of way law in the City of Pittsburgh.

Plaintiff maintains that, because a pedestrian is not necessarily negligent *per se* for crossing in an intersection, the trial court did not abuse its discretion in not charging the jury on negligence *per se*. She contends there is no

8

record evidence supporting the Port Authority's contention that the jury was somehow confused by the legal standard and principles so as to warrant a new trial.

Perhaps most illustrative, Plaintiff asserts, the jury did in fact find Plaintiff negligent even without the *per se* charge  Thus, Plaintiff argues, to the extent the trial court erred, it was harmless, and the jury's verdict should not be disturbed.

## 2. Analysis

The purpose of a jury charge is to clarify the legal principles at issue. Rittenhouse v. Hanks, 777 A.2d 1113 (Pa. Super. 2001).  Jury instructions must be upheld if they adequately and accurately reflect the law and are sufficient to guide the jury in its deliberations.  Von der Heide v. Dep't of Transp., 718 A.2d 286 (Pa. 1998).

Further, our Supreme Court explains:

> In examining jury instructions, our scope of review is limited to determining whether the trial court committed a clear abuse of discretion or error of law controlling the outcome of the case.  Error in a charge is sufficient ground for a new trial if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue.  A charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission in the charge which amounts to a fundamental error.  In reviewing a trial court's charge to the jury we must look to the charge in its entirety.  Because this is a question of law, this Court's review is plenary.

Quinby v. Plumsteadville Family Practice, Inc., 907 A.2d 1061, 1069-70 (Pa. 2006) (citations and quotations omitted). "As a general rule, refusal to give a requested instruction containing a correct statement of law is ground for a new trial unless the substance thereof has otherwise been covered in the court's general charge." Ottavio v. Fibreboard Corp., 617 A.2d 1296, 1302 (Pa. Super. 1992).

Relevant here, the trial court charged the jury on general negligence, comparative negligence, and the apportionment of comparative negligence. Instructing the jury on comparative negligence and apportionment, the trial court stated:

> As a defense, the [Port Authority] claims that [Plaintiff's] own negligence was a factual cause of her injury. [The Port Authority] has the burden to prove both of the following: That [Plaintiff] was negligent, and that [Plaintiff's] negligence was the factual cause of her injury.
>
> If you find [Plaintiff's] percentage of negligence is greater than 50 percent, [Plaintiff] cannot recover her damages. If you decide that both [Plaintiff] and [the Port Authority] were negligent and that the negligence of both parties was a factual cause of [P]laintiff's injuries, you must then decide how much each party's negligence contributed to the [P]laintiff's injury. You should state each party's share of the negligence in the form of a percent. Together these percentages must total 100 percent.
>
> If you decide that [Plaintiff's] negligence was greater than 50 percent, then [P]laintiff cannot recover. If you decide that [Plaintiff's] negligence was less than or equal to [the Port Authority's], then [P]laintiff can recover for her injuries. You must then decide the dollar amount of [Plaintiff's] damages.

10

In determining [Plaintiff's] damages, do not consider the percent of [Plaintiff's] negligence. I will reduce [Plaintiff's] damages based upon the percent of negligence you have assigned to the parties.

If you find that [the Port Authority] was not negligent, or that the negligence of the [Port Authority] was not a factual cause in bringing about the harm to [Plaintiff], your verdict must be for the [Port Authority] on the negligence claim.

If you find that [the Port Authority] was negligent and that the conduct of the [Port Authority] was a factual cause of the harm to [Plaintiff], you should then consider whether [Plaintiff] was negligent and whether the negligence of [Plaintiff] was a factual cause in bringing about [Plaintiff's] own harm.

If you decide that both [Plaintiff] and [the Port Authority] were negligent, that the negligence of both parties was a factual cause of the injury to [Plaintiff], you must decide the percentage of each party's negligence. The total of these percentages must be 100 percent.

If you decide that the negligence of [Plaintiff] was more than the negligence of the [Port Authority], then your verdict must be for the [Port Authority] on the negligence claim. If you decide that the negligence of [Plaintiff], if any, was less than or equal to the negligence of [the Port Authority], your verdict must be for [Plaintiff] on the negligence claim.

R.R. at 305a-08a.

In its written proposed points for charge, the Port Authority requested that, in addition to the general negligence charge given by the trial court, see R.R. at 304a, that the trial court also instruct the jury as to negligence *per se*, see Pa. SSJI

(Civ) 13.100,[2] based on three Vehicle Code provisions relating to the duties of care of pedestrians, 75 Pa. C.S. §§3542(b), 3543(a) and 3544(a) and (d). See R.R. at 449a.

Section 3542(b) of the Vehicle Code (pertaining to "Right-of-way of pedestrians in crosswalks") states: "**(b) Exercise of care by pedestrian.--**"No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close as to constitute a hazard." Additionally, Section 3543(a) of the Vehicle Code (relating to "Pedestrians crossing at other than crosswalks") states: "(a) **General rule.--**"Every pedestrian crossing a roadway at any point other than within a crosswalk at an intersection or any marked crosswalk shall yield the right-of-way to all vehicles upon the roadway." Further, Section 3544 of the Vehicle Code states, in pertinent part:

> **(a) Mandatory use of available sidewalk.--**Where a sidewalk is provided and its use is practicable, it is unlawful for any pedestrian to walk along and upon an adjacent roadway.

---

[2] Pennsylvania Suggested Standard Jury Instruction (Civ) 13.100 ("Violation of Statute—Negligence Per Se) states:

> The law provides: [quote relevant statutory provision].
> [name of plaintiff] claims that [name of defendant] violated this law.
>
> If you find that [name of defendant] violated this law, you must find that [name of defendant] was negligent.
>
> If you find that [name of defendant] did not violate this law, then you must still decide whether [name of defendant] was negligent because [he] [she] failed to act as a reasonably careful person would under the circumstances established by the evidence in this case.

Pa. SSJI (Civ) 13.100.

* * * *

> **(d) Right-of-way to vehicles.--**Except as otherwise provided in this subchapter, any pedestrian upon a roadway shall yield the right-of-way to all vehicles upon the roadway.

75 Pa. C.S. §3544(a), (d).

Here, the jury was confronted with conflicting testimony as to whether the Port Authority bus struck Plaintiff while she was walking on Sixth Avenue, outside the crosswalk of Montour Way, or while she was walking within the crosswalk of Montour Way. Specifically, Plaintiff testified that she was two feet outside the crosswalk of Montour Way when the bus struck her. R.R. at 51a-52a. She testified that she was on Montour Way because the crosswalk was set back approximately three-and-a-half feet from the curb line of Sixth Avenue and the opposite sidewalk was directly in front of her. Id.

On the other hand, Anglin testified that the bus's right front bumper struck Plaintiff, R.R. at 380a, and that Plaintiff was two arms lengths away from Anglin, which he equated as two feet outside of the crosswalk. R.R. at 375a, 377a, 390a-91a. Anglin specifically testified that the bus struck Plaintiff while she was on Sixth Avenue. R.R. at 391a. Additionally, Broadwick testified that Plaintiff stepped out onto Sixth Avenue into the path of the bus. R.R. at 172a.

Despite the existence of testimony that the bus struck Plaintiff after she walked outside of the crosswalk on Montour Way and onto Sixth Avenue into the path of the bus, the trial court rejected the Port Authority's proposed points for charge regarding the statutory duties of care of pedestrians. It did so on the ground

13

that Plaintiff did not receive a citation under any of the cited statutory provisions. R.R. at 237a. The trial court's reasoning on this point was erroneous. <u>See</u> <u>Hannon v. City of Phila.</u>, 587 A.2d 845, 851 (Pa. Cmwlth. 1991) ("Contrary to [the appellant's] claims, evidence of violation of a statute, such as the Vehicle Code here, may constitute negligence *per se*, <u>irrespective of the criminal penalties contained therein or whether there has been a conviction thereunder</u>.") (emphasis added) (citation omitted).

In addition, contrary to the trial court's determination, the negligence *per se* instruction, coupled with the duties of care for pedestrians set forth in the Vehicle Code were relevant to the jury's apportionment of comparative negligence here.[3]

---

[3] The parties discuss our decision in <u>Sodders v. Fry</u>, 32 A.3d 882 (Pa. Cmwlth. 2011). There, this Court held that a common pleas court erred in failing to charge the jury on negligence *per se* where the evidence showed a Vehicle Code violation occurred despite the fact that the common pleas court charged the jury on negligence generally and read the applicable Vehicle Code provisions to the jury. This Court explained that the common pleas court's "failure to instruct the jury regarding negligence *per se* resulted in an inaccurate description of the relative duties of care in this case." <u>Id.</u> at 888. As a result, this Court agreed with the common pleas court that a new trial was warranted.

Here, not only did the trial court decline to instruct the jury as to negligence *per se*, it also declined to provide the jury with the relevant Vehicle Code provisions relating to the duty of care of pedestrians. Instead, the trial court only provided the jury with the general charge on negligence, which, as explained more fully below, did not adequately and accurately reflect the law.

Nevertheless, citing <u>Bressler v. Dannon Yogurt</u>, 573 A.2d 562 (Pa. Super. 1990), Plaintiff argues that if the trial court here gave the Port Authority's requested instruction that a pedestrian is negligent *per se* if she does not use an available crosswalk or fails to yield to a vehicle that would constitute reversible error. <u>Bressler</u> is inapposite here.

In <u>Bressler</u>, a pedestrian was struck while walking on a roadway by a vehicle that was backing out of a parking space. At trial, the defendant driver, relying on one of the Vehicle Code provisions cited by the Port Authority here, requested and received a negligence *per se* charge over the plaintiff's objection. The common pleas court there instructed the jury: "If you find that [the plaintiff] was in the act of crossing the roadway at a point other than within a crosswalk or an intersection, then you should find him negligent." <u>Id.</u> at 565-66. The jury found the pedestrian plaintiff 50% causally negligent. In reversing the common pleas court and ordering a new trial,

14

To that end, apportionment is a practical inquiry into the specific circumstances and depends on the unique context of each case. Hairston v. Allen, 153 A.3d 999 (Pa. Super. 2016). As to the apportionment of comparative negligence charge that the trial court gave the jury here, see Pa. SSJI (Civ) 13.190; R.R. at 307a, the Superior Court explained:

> We have concluded that the jury should be informed of the consequence of its apportionment of negligence. We regard such information as essential if the jury is to be able to apply the equitable considerations and arrive at the compromises that are an inherent part of the jury system.

Peair v. Home Ass'n of Enola Legion No. 751, 430 A.2d 665, 671-72 (Pa. Super. 1981).

Further, the apportionment charge allows the jury to consider all circumstances in its commonsense determination of how to apportion causal negligence. See Pa. SSJI (Civ) 13.190, Subcommittee Note. There are no

---

the Superior Court explained that based on the court's charge, "the jury was ... under the misapprehension that [the plaintiff] could be found negligent solely because he had attempted to cross … in the middle of a block. The jury, instead, should have been instructed that a pedestrian may not cross between intersections without exercising due care, and whether such care has been maintained is a question of fact to be determined by the jury after being adequately instructed as to the applicable standard of care." Id. at 566-67.

The Court in Bressler further explained that where a pedestrian traverses a street at other than a regular crossing he is bound to exercise a higher degree of care for his own safety than if he were crossing at an intersection. The reason for the rule is apparent as he is crossing at a place where vehicular traffic could not be expected to anticipate a pedestrian. "It is equally well settled that it is the duty of a pedestrian to look before he undertakes a street crossing and to continue to look as he proceeds and such duty is particularly incumbent upon one who traverses a street between intersections." Id. at 567 (citation omitted).

For the reasons discussed below, the trial court here would not have committed reversible error by informing the jury of the Vehicle Code provisions relating to the duties of care of pedestrians as the jury was permitted to consider these duties in its apportionment of negligence. Further, contrary to Plaintiff's assertions, just because there was conflicting testimony as to the location in which the bus struck Plaintiff, does not mean that the instructions regarding the statutory duties of care for pedestrians should not have been given as the resolution of the evidentiary conflict was for the jury as fact-finder.

limitations on what the jury may consider in this apportionment, and the jury may apply equitable considerations to reach a compromise. Id. As a result, the jury could consider *the number and type of specific duties violated in addition to the general duty of a reasonable person to protect herself and others*. Indeed, comparative negligence applies regardless of the nature of the negligence alleged, including a claim of negligence *per se* such as that asserted by the Port Authority here. Congini v. Portersville Valve Co., 470 A.2d 515 (Pa. 1983) (permitting fact-finder to compare negligence *per se* of a host serving alcohol to a minor who illegally and willingly consumed alcohol); White by Stevens v. Southeastern Pa. Transp. Auth., 518 A.2d 810, 818 (Pa. Super. 1986) (it is "within the exclusive province of the jury to determine whether one shown to have been guilty of negligence per se, was guilty of greater negligence than another shown to have been guilty of some other kind of negligence per se or merely of negligence as a matter of fact and to compare the two and determine which is greater.") (citations omitted).

More importantly, after the trial court declined to charge the jury on negligence *per se* based on the Vehicle Code provisions relating to the duties of care of pedestrians in accordance with the Port Authority's proposed points for charge, and the jury began its deliberations, the jury returned with three questions. R.R. at 322a. The first question asked: "[W]hat is the pedestrian right of way law in the City of Pittsburgh?" Id.; see also R.R. at 451a. In response, the trial court informed counsel that it proposed to inform the jury that "the right of way law is not an issue in this case[.]" R.R. at 322a. The Port Authority's counsel objected, asserting the jury's question pertained to the Port Authority's proposed points for charge regarding pedestrian duties of care under the Vehicle Code. Id. The trial court

16

disagreed, and it informed the jury that the right-of-way law was not an issue in this case. R.R. at 332a. Again, this was error.

"Where a jury returns on its own motion and indicates confusion, the court has a duty to give such additional instructions on the law, as the court may deem necessary to clarify the jury's doubt or confusion." Chicchi v. Southeastern Pa. Transp. Auth., 727 A.2d 604, 609 (Pa. Cmwlth. 1999) (citation omitted). Thus,

> [t]he general rule on jurors' questions appears in Worthington v. Oberhuber, [215 A.2d 621 (Pa. 1966)]: 'There may be situations in which a trial judge may decline to answer questions put by the jury, but where a jury returns on its own motion indicating confusion, the court has the duty to give such additional instructions on the law as the court may think necessary to clarify the jury's doubt or confusion.' In Nebel v. Mauk, [253 A.2d 249 (Pa. 1969)], this statement is qualified. The jury there asked the judge, 'If a person is even slightly negligent can he claim damages from another person?' When counsel could not agree on an answer, the court declined to instruct the jury further. A verdict was rendered for the defendant, and the plaintiff's motion for a new trial was granted. This order was reversed on appeal. After citing the rule from Worthington, the court added the following:
>
> > While the fact that the question was asked would indicate that some confusion existed, a new trial should not be ordered unless it can be shown that the confusion worked to the detriment of the losing party … In order to obtain a new trial the moving party must demonstrate in what way the trial error caused an incorrect result. Id. [at 251].

Reilly v. Poach, 323 A.2d 50, 51-52 (Pa. Super. 1974). Further,

> [a]lthough in Nebel the court spoke of 'demonstrat(ing)' that refusal to answer a question 'caused' an incorrect result, this language must not be read

17

> too literally or out of context. Taken with the statement in <u>Worthington</u> of the trial judge's 'duty', <u>Nebel</u> does not require that there appear more than a substantial possibility of an incorrect result after consideration is given to the particular facts of the case in question, with attention also to the nature of the response required to answer the particular question put to the judge.

<u>Id.</u> at n.2.

Here, despite seeking clarification as to a critical issue in the case, the right-of-way law, the trial court declined to provide accurate, relevant legal instructions contained in the Vehicle Code relating to the duties of care of pedestrians. There is a substantial possibility that the trial court's refusal to provide these requested instructions, coupled with the trial court's statement that the right-of-way law was not an issue in this case, influenced the jury's apportionment deliberations. Indeed, the fact that the jury specifically requested guidance on this issue signifies the importance of the instruction, and the refusal to provide the requested guidance cannot be declared absolutely harmless.[4]

Moreover, we disagree with the trial court and Plaintiff that the trial court's failure to instruct the jury on the Vehicle Code provisions discussed above is harmless on the ground that the jury ultimately found Plaintiff negligent. As set forth above, in apportioning the comparative negligence between Plaintiff and the Port Authority, the jury could consider the number and type of specific duties Plaintiff may have violated in addition to the general duty of a reasonable person to

---

[4] Nevertheless, Plaintiff asserts: "Should the Court agree with the Port Authority and determine that a single question—answered relatively shortly before the verdict was rendered—is evidence of confusion, it would essentially expose every verdict where a question is answered by the trial court to a new trial." Br. of Designated Appellee at 20. In light of our detailed discussion above, we disagree with Plaintiff's overly broad characterization of the purported consequences of our holding in this case.

18

protect herself and others. Therefore, consideration of the specific duties of care of pedestrians could have impacted the jury's determination as to how to apportion the comparative negligence here. This is particularly true here in light of the jury's verdict finding that the Port Authority and Plaintiff each bore 50% of the negligence that was the cause of Plaintiff's injuries. Indeed, had the jury found Plaintiff 51% causally-negligent, no recovery would be permitted. See, e.g., Dawson v. Fowler, 558 A.2d 565, 567 (Pa. Super. 1989) ("In Pennsylvania, where the plaintiff is 51% or more causally-negligent, no recovery is permitted.") (citation omitted). Under these circumstances, a new trial is warranted.

### B. Delay Damages

Based on our determination that a new trial is warranted, we dismiss as moot Plaintiff's consolidated appeal through which Plaintiff argues that her delay damages should have been calculated on the initial molded verdict amount of $1,365,500, rather than the final molded verdict of $250,000.

### III. Conclusion

For the foregoing reasons, we are constrained to reverse the trial court's order, and we remand to the trial court for a new trial. Consequently, we dismiss as moot Plaintiff's appeal challenging the trial court's calculation of delay damages.

ROBERT SIMPSON, Judge

19

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Joan P. Grove | : | |
| | : | |
| v. | : | No. 132 C.D. 2017 |
| | : | |
| Port Authority of Allegheny County, Appellant | : | |
| | : | |
| Joan P. Grove | : | |
| | : | |
| v. | : | No. 195 C.D. 2017 |
| | : | |
| Port Authority of Allegheny County | : | |
| | : | |
| Appeal of: Joan P. Grove | : | |

## O R D E R

**AND NOW**, this 12th day of January, 2018, the order of the Court of Common Pleas of Allegheny County is **REVERSED** and the matter is **REMANDED for a NEW TRIAL** consistent with the foregoing opinion. Designated Appellee Joan P. Grove's consolidated appeal is **DISMISSED as MOOT**.

Jurisdiction is relinquished.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joan P. Grove                                          :
                                                       :
                    v.                                 :     No. 132 C.D. 2017
                                                       :
Port Authority of Allegheny County,                    :
                    Appellant                          :

Joan P. Grove                                          :
                                                       :
                    v.                                 :     No. 195 C.D. 2017
                                                       :     Argued:  November 14, 2017
Port Authority of Allegheny County                     :
                                                       :
Appeal of:  Joan P. Grove                              :


BEFORE:     HONORABLE ROBERT SIMPSON, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE DAN PELLEGRINI, Senior Judge


DISSENTING OPINION BY
SENIOR JUDGE PELLEGRINI                    FILED: January 12, 2018


        This appeal presents the question of whether the path the jury takes to find that a party breached a duty – *i.e.*, negligent-in-fact or negligent *per se* – makes that party "more negligent" in allocating the percentage of factual cause of the injuries for purposes of comparative negligence. Because how a jury finds that a party breached a duty of care makes no difference in determining the "causal connection" – *i.e.*, factual cause of the injury – and the majority holds that it does, I respectfully dissent.

## I.

### A.

In 2014, Plaintiff was walking on the sidewalk on Sixth Avenue in downtown Pittsburgh. Intersecting with Sixth Avenue is Montour Way, a one-way alley that she had to cross to go to her bus stop. Motor vehicle traffic on Sixth Avenue was to her left. When she reached Montour Way, there was a car stopped in the alley blocking its pedestrian crosswalk. Another pedestrian, Dante Anglin (Anglin), was walking in the same direction as Plaintiff. Anglin entered Montour Way ahead of Plaintiff and was forced to veer to his left because a car was blocking Montour Way's pedestrian crosswalk. When she came to the intersection, Plaintiff also stepped around the vehicle and passed Anglin on the left side when a Port Authority bus going down Sixth Avenue struck her.

Before striking Plaintiff, the bus had been moving down Sixth Avenue at 9 miles per hour when it encountered a stopped vehicle in its lane attempting to turn left. Even though Sixth Avenue is marked as a two-lane roadway, the bus maneuvered around the vehicle when the front right bumper or mirror of the bus struck Plaintiff. Plaintiff fell and hit her head on the pavement and her right leg was trapped under the bus. The wheel of the bus ran over Plaintiff's leg and dragged her along the ground. Betty Cunningham (Cunningham), the bus driver, did not realize she had struck Plaintiff until Joyce Broadwick (Broadwick), a passenger on the bus, yelled for her to stop the bus. Plaintiff's leg was severed almost completely. Over the next three months, she underwent approximately 13 surgeries to try to save her leg. In the end, her leg was amputated just below the knee and she was fitted with a prosthesis.

## B.

Plaintiff brought a tort action against the Port Authority claiming that her injuries were caused when the bus negligently passed a stopped vehicle in its lane that was attempting to turn left because Sixth Avenue is only marked as a two-lane roadway.  By doing so, Plaintiff contended that Cunningham drove the bus up on the curb and encroached on the adjoining intersection of Montour Way.

While admitting that she was not in the crosswalk on Montour Way because a car blocked it, Plaintiff testified that when the bus struck her, she was still on Montour Way and her foot did not venture onto Sixth Avenue.  Anglin testified that Plaintiff was two feet outside of the crosswalk on Montour Way but was on Sixth Avenue when the bus struck her.[1]

Both parties submitted proposed charges to the jury.  The Port Authority requested that the trial court provide the jury with summaries of four different statutory provisions in the Vehicle Code[2] regarding pedestrian duties of

---

[1] Broadwick was unable to offer a firm opinion on the matter because she only saw the top of Plaintiff's head for approximately one second before the bus struck her and was unable to see where Plaintiff's feet were located.

[2] Vehicle Code, 75 Pa.C.S. §§ 101 – 9805.

care. These provisions were: 75 Pa.C.S. §§ 3542(b),[3] 3543(a),[4] 3544(a)[5] and 3544(d).[6] After the case was given to the jury with the standard jury instructions for negligence and how to allocate damages under comparative negligence, the jury returned with three questions, one of which was, "What is the pedestrian right of way law in the City of Pittsburgh?" (Reproduced Record (R.R.) at 451a.) The Port Authority again requested that the trial court provide the jury with its proposed charges regarding duties of pedestrians set forth in the Vehicle Code. Again, the trial court denied the request.

The jury resumed its deliberations and returned a verdict finding both parties at fault and apportioning negligence at 50% each, along with a verdict of $2,731,000, which was reduced by Plaintiff's comparative negligence to $1,365,500. The trial court molded the verdict to $250,000 pursuant to the statutory cap of damages against Commonwealth agencies.[7]

---

[3] 75 Pa.C.S. § 3542(b), regarding the exercise of the duty of care by pedestrians in crosswalks, provides that "[n]o pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close as to constitute a hazard."

[4] 75 Pa.C.S. § 3543(a), regarding the general rule of pedestrians crossing at places other than crosswalks, provides that "[e]very pedestrian crossing a roadway at any point other than within a crosswalk at an intersection or any marked crosswalk shall yield the right-of-way to all vehicles upon the roadway."

[5] 75 Pa.C.S. § 3544(a), regarding the mandatory use of available sidewalks for pedestrians walking along a highway, provides that "[w]here a sidewalk is provided and its use is practicable, it is unlawful for any pedestrian to walk along and upon an adjacent roadway."

[6] 75 Pa.C.S. § 3544(d), regarding the right of way for vehicles on a highway, provides that "[e]xcept as otherwise provided in this subchapter, any pedestrian upon a roadway shall yield the right-of-way to all vehicles upon the roadway."

[7] 42 Pa.C.S. § 8528(b).

The majority holds that the trial court's failure to give a negligence *per se* jury instruction regarding provisions of the Vehicle Code setting forth the duties of pedestrians in crosswalks and on highways made those instructions inadequate, and that the Port Authority suffered prejudicial error. The reason behind this holding is that if the trial court gave the proper instructions, the jury could have found Plaintiff to be 1% more negligent – *i.e.*, 51% – thus precluding any recovery because a plaintiff is only entitled to partial recovery when she is found 50% or less negligent. 42 Pa.C.S. § 7102.

While I agree with the majority that the trial court should have given the negligence *per se* instruction, it was harmless error because to give such a charge would have not made a difference in determining the percentage of factual cause for comparative negligence purposes. Let me explain why.

## II.

## A.

In a typical negligence case, a plaintiff must prove all of the following elements of negligence: (1) the defendant owed the plaintiff a duty or obligation recognized by law; (2) the defendant breached that duty; (3) a causal connection existed between the defendant's conduct and the resulting injury; and (4) actual damages incurred. *Page v. City of Philadelphia*, 25 A.3d 471, 475 (Pa. Cmwlth. 2011) (citing *Talarico v. Bonham*, 650 A.2d 1192, 1195–96 (Pa. Cmwlth. 1994)). If the jury finds that a party's conduct breached a duty owed, that is "negligence-in-fact." When an individual violates an applicable statute, regulation or ordinance

designed to prevent a public harm, it is "negligence *per se*." If the jury finds that a person violated an applicable statute, this finding only establishes the first two elements of negligence – duty and breach. *Ford v. Philadelphia Housing Authority*, 848 A.2d 1038, 1050, n. 11. (Pa. Cmwlth. 2004). Even if a plaintiff proves negligence *per se*, a party cannot recover unless it can be proven that such negligence is the "proximate" or "legal" cause of the injury. *Id.*

Pennsylvania Standard Jury Instruction (Civ. 2017) 13.100 (emphasis added) provides that when there has been a violation of a statute, the following instruction is to be given:

> The law provides: [*quote relevant statutory provision*]. [*name of plaintiff*] claims that [*name of defendant*] violated this law.
>
> If you find that [*name of defendant*] violated this law, you must find that [*name of defendant*] was negligent.
>
> If you find that [*name of defendant*] did not violate this law, then you **must still decide whether** [*name of defendant*] **was negligent** because [he] [she] failed to act as a reasonably careful person would under the circumstances established by the evidence in this case.

As the Subcommittee Note explains, a negligence *per se* finding does not establish the factual cause of a plaintiff's injury.

> The instruction that violation of a mandatory statutory provision constitutes negligence as a matter of law **must be accompanied by the caveat that such violation must be found to be a factual cause in bringing about the injury** for liability to accrue. *Majors v. Brodhead Hotel*,

> 205 A.2d 873 (Pa. 1965); *Wermeling v. Shattuck*, 76 A.2d 406, 409 (Pa. 1950).  This is one of the ways of tempering what has been described as "the harsh doctrine of negligence *per se*." *Gaither v. Myers*, 404 F.2d 216, 221, n.16 (D.C. Cir. 1968).  **The doctrine is applicable to both plaintiffs and defendants**.  *D'Ambrosio v. City of Phila.*, 47 A.2d 256 (Pa. 1946).

*Id.* (emphasis added).

What all of this shows is that there are different paths that a jury can take to arrive at the same place – *i.e.*, that a plaintiff's conduct breached a duty of care.  This case illustrates this point.  If a negligence *per se* charge had been given with the relevant Vehicle Code provisions, it would have resulted in a finding that Plaintiff was negligent and breached her duty by being on Sixth Avenue when the bus hit her.  Yet, even without the negligence *per se* jury instruction, the jury arrived at the same conclusion; she breached her duty of care by her conduct – walking on Sixth Avenue – and was therefore negligent.  How you arrive at this conclusion has nothing to do with the separate issue of apportionment – *i.e.*, the factual cause of the injury.

**B.**

Comparative negligence does the apportionment of damages by comparing the factual causes of an injury.  Under this standard, the factfinder compares the negligent conduct of the parties and the resulting injury to arrive at a calculation of the damages factually caused by each party's negligence.  Pursuant to Pennsylvania law, the fact that a plaintiff may have been contributorily negligent:

[S]hall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the **causal negligence** of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

42 Pa. C.S. § 7102(a) (emphasis added).

When comparative negligence is at issue, Pennsylvania Standard Jury Instruction 13.180 (Civ. 2017) provides:

As a defense, [*name of defendant*] claims that [*name of plaintiff*]'s own negligence was a **factual cause** of [his] [her] [injury] [harm].

[*name of defendant*] has the burden to prove both of the following:

1. that [*name of plaintiff*] was negligent; and

2. that [*name of plaintiff*]'s negligence was a **factual cause** of [his] [her] [injury] [harm].

If you find [*name of plaintiff*]'s percentage of negligence is greater than 50 percent, [*name of plaintiff*] cannot recover [his] [her] damages.

(Emphasis added).

Under this instruction, the jury is charged with attributing the negligent conduct of each party to the factual cause of the harm in order to determine the percentage that each party is responsible for those injuries for which compensation

is sought.  Once a party, by his or her conduct, is found to have breached a duty, the factual cause of the plaintiff's injuries must be determined.

Factual cause is determined by comparing the "conduct" of the parties. Pennsylvania Standard Jury Instruction 13.20 (Civ. 2017) (emphasis added) treats factual cause as such:

> In order for [*name of plaintiff*] to recover in this case, [*name of defendant*]'s [**negligent**] [grossly negligent] [reckless] conduct **must have been a factual cause in bringing about harm.  Conduct is a factual cause of harm when the harm would not have occurred absent the conduct.  To be a factual cause, the conduct must have been an actual, real factor in causing the harm, even if the result is unusual or unexpected.** A factual cause cannot be an imaginary or fanciful factor having no connection or only an insignificant connection with the harm.
>
> To be a factual cause, [*name of defendant*]'s conduct need not be the only factual cause.  The fact that some other causes concur with [*name of defendant*]'s negligence in producing an injury does not relieve [*name of defendant*] from liability as long as [his] [her] own negligence is a factual cause of the injury.

In determining factual cause, it does not matter **how** a plaintiff breached a duty of care (e.g., negligence *per se* or just plain negligence) because the factual cause of injury is the same – here, negligently walking on Sixth Avenue.  In this case, the jury found that this conduct factually caused 50% of Plaintiff's injuries.

## C.

The majority position seems to rest on the following:

[T]he [comparative negligence] apportionment charge allows the jury to consider all circumstances in its commonsense determination of how to apportion causal negligence. *See* Pa. SSJI (Civ) 13.190, Subcommittee Note. There are no limitations on what the jury may consider in this apportionment, and the jury may apply equitable considerations to reach a compromise. *Id*. As a result, the jury could consider *the number and type of specific duties violated in addition to the general duty of a reasonable person to protect herself and others*. Indeed, comparative negligence applies regardless of the nature of the negligence alleged, including a claim of negligence *per se* such as that asserted by the Port Authority here. *Congini v. Portersville Valve Co.*, 470 A.2d 515 (Pa. 1983) (permitting fact-finder to compare negligence *per se* of a host serving alcohol to a minor who illegally and willingly consumed alcohol); *White by Stevens v. Southeastern Pa. Transp. Auth.*, 518 A.2d 810, 818 (Pa. Super. 1986) (it is "within the exclusive province of the jury to determine whether one shown to have been guilty of negligence per se, was guilty of greater negligence than another shown to have been guilty of some other kind of negligence per se or merely of negligence as a matter of fact and to compare the two and determine which is greater.") (citations omitted).

(Majority Op. at 16.) (Emphasis in original). I agree with the majority that the jury can make common-sense determinations to apportion causal negligence and that comparative negligence applies regardless of the nature of the negligence. I do not see, however, how those propositions support the majority's conclusion that there are "no limitations" on what the jury can consider, including the number and type of specific duties violated. That suggests that if conduct can be considered a breach of duty under both negligence-in-fact and negligence *per se*, the factual cause of the injuries is somehow increased even though the underlying conduct is the same. *See,*

*e.g.*, *Drew v. Work*, 95 A.3d 324, 338 (Pa. Super. 2014) (holding, *inter alia*, that the trial court did not err in declining to charge a jury on negligence *per se* regarding an alleged Vehicle Code violation where the specific statute "merely recites general negligence principles and a charge related thereto would serve no purpose other than to confuse the jury.").

The only support for that proposition is purportedly the majority's quotation from *White by Stevens v. Southeastern Pennsylvania Transportation Authority*, 518 A.2d 810, 818 (Pa. Super. 1986), which itself is a quote from *Johns v. Secress*, 126 S.E.2d 296, 298 (Ga. Ct. App. 1962). *Johns* involved comparing the conduct of one party who was negligent *per se* with the other party who was negligent-in-fact. The full quote from *Johns* is:

> But, **negligence per se**, of which the deceased was admittedly guilty, **is no greater as a matter of law than negligence as a matter of fact,** and it is the right and province of the jury to determine the degree or amount of negligence attributable to each party and whose negligence is greater and whose and what negligence was the proximate cause of the injuries complained of. While an act defined by the law as negligence per se is not issuable, in the sense that no issue may be made as to the act being or not being negligence, yet it is still within the exclusive province of the jury to determine whether one shown to have been guilty of negligence per se, was guilty of greater negligence than another shown to have been guilty of some other kind of negligence per se or merely of negligence as a matter of fact and to compare the two and determine which is greater.

*Johns*, 126 S.E.2d at 298. This passage does not support the proposition that a party's status as either negligent *per se* or negligent-in-fact can amount to a person

being more negligent. If anything, this passage supports the proposition that a person found to be negligent *per se* is no "more" negligent than a person found negligent-in-fact. This is because comparative negligence is measured by how damages are caused from the conduct that constituted a breach of duty, not how the determination that the breach of duty was made.

### III.

In conclusion, it is irrelevant **how** the jury found that Plaintiff breached a duty – *i.e.*, negligence-in-fact or negligence *per se* – because the jury's determination was made based on her conduct of encroaching on Sixth Ave. Once it has been found that there was a duty and it was breached, then the conduct of the parties are compared to determine what percentage each party's conduct was the factual cause for the injuries for which compensation was sought. The jury here, based on the respective conduct of the parties, found that each of them was 50% at fault for Plaintiff's injuries.

I agree that the trial court should have given the negligence *per se* charge. However, because the jury still found Plaintiff's conduct negligent, the Port Authority suffered no prejudice and is not entitled to a new trial based on the trial court's failure to give the negligence *per se* charge. Accordingly, I respectfully dissent.

_____
DAN PELLEGRINI, Senior Judge